16378

GILBERT *ET AL.* v. EASTERLING *ET AL.*

(60 S. E. (2d) 595)

*Messrs. C. B. Ruffin* and *Morris W. Hyatt,* of Bishopville,
*for Appellants,*

*Messrs. Mozingo & Watts* and *Atkinson & Clayton,* of Darlington, *for Respondents,*

July 5, 1950.

BAKER, Chief Justice.

In 1947, James M. Easterling and Leland Richard Easterling, appearing in the caption as the sole respondents, although as will hereinafter be seen, Loraine Easterling is also a respondent and is the one chiefly interested, purchased from the appellants, Verlie Gilbert and Theodosia Gilbert, a tract of land in Darlington County containing 430 acres, more or less, the purchase price being $10,000.00. At the time of the conveyance of this land to said James M. Easterling and Leland Richard Easterling, they paid $1,000.00, and the balance of $9,000.00 was secured by a purchase price mortgage, payable in nine equal annual installments, with interest from date at 6 per cent. per annum, the first installment of $1,000.00, and interest on the whole, becoming due October 1, 1948. The mortgagors failed to make the first payment, but did pay on January 12, 1949, the installment of $1,000.00, and $100.00 on the interest. No other payment on the mortgage was made.

The mortgagees, appellants herein, on July 13, 1949, paid insurance premiums amounting to $72.50 to protect certain buildings which were on this land when it was conveyed to the mortgagors, and on August 12, 1949, paid the past due taxes. No portion of the insurance premiums and taxes paid

had any relation to the building or residence from which the issue presented by this appeal stems.

Mr. L. N. Gilbert, who apparently resides in or near Hartsville, in the County of Darlington, testified that he was the agent of his sisters, the appellants herein, in the handling of this property, and the record as a whole is corroborative of such fact. He has handled every detail in connection with this land from the time the two Easterling brothers were bargaining to purchase same, and ever since.

In the first part of January, 1949, Loraine Easterling, a brother of James M. and Leland Richard Easterling, and a World War II veteran, desiring to build a residence, but owning no land on which to erect same, entered into an agreement with his brothers who held the legal title to this 430 acre tract of land which permitted him to build on the south-west corner thereof, a four room dwelling, the understanding being if his brothers paid the mortgage thereon, they would give him one acre including the portion where he built this residence, and if they couldn't pay the mortgage, then he could move this house. Notwithstanding this agreement with his brothers, before constructing his residence on this land, Loraine Easterling and Leland Richard Easterling had a conversation with L. N. Gilbert in reference to the building of this house on the land, and according to their testimony, Mr. Gilbert told Loraine "to go ahead and he would give him the piece of land; that it would be worth that much to the place." Mr. Gilbert denies having any such conversation with Loraine and his brother Leland Richard Easterling. Be that as it may, Loraine Easterling, in January, 1949, built at his own expense a very nice four room home on the south-west corner of this 430 acre tract of land, and occupied same. We gather from the record that he also built some outhouses thereon.

On August 20, 1949, the appellants commenced their action for the foreclosure of the real estate mortgage given by James M. and Leland Richard Easterling. While this action

was pending, and in the early part of September, 1949, it is in the record that Loraine Easterling and Leland Richard Easterling entered into an additional agreement with L. N. Gilbert that it James M. Easterling and Leland Richard Easterling would convey this land back to the appellants, and thus save the expense of foreclosure, he would give Loraine Easterling a deed to one acre of the land on which Loraine had built his home, and thus set at rest any issue which could arise as to moving the house. In accord therewith, and on September 8, 1949, a deed was prepared in the office of the appellants' attorneys, there signed by Leland Richard Easterling and dower renounced by his wife, and delivered to Loraine, who carried it to Washington, D. C., at his own expense where James M. Easterling was then residing, in order to procure his signature thereto. Upon returning with the deed properly excuted by James M. Easterling, with his wife's dower duly renounced, and approved by appellants' attorney, and tendering it to L. N. Gilbert, the said Gilbert refused to accept the deed, stating that it was then too late as the matter was then in court. Gilbert denied any such agreement on his part, but said he told Loraine that he would give him what it would cost for the foreclosure if he would procure the deed properly executed by his brothers. He futher testified that at some time during the negotiations for the reconveyance of the land, he had offered to give Loraine $1,500.00 for the home he had built on this land, or would convey the land on which the house had been built (presumably one acre of the land) to Loraine if he would pay him $1,000.00; that Loraine didn't pay him $1,000.00, and he didn't offer to pay Loraine $1,500.00, and refused to accept the deed. So far as the record shows, the status of the foreclosure was unchanged from the time appellants' attorney prepared the deed and it was executed by Leland Richard Easterling in said attorney's office, and when Loraine returned from Washington, D. C., with the signature thereon of James M. Easterling.

The appellants proceeded with the foreclosure proceeding resulting in a decree of foreclosure and order for sale of the land on December 5, 1949. After the order for sale of the premises, and pending the advertisement of the sale, the residence which Loraine Easterling had built on the south-west corner of this tract of land was moved therefrom onto the adjoining lands of Guy Wilhelm.

L. N. Gilbert, on behalf of the appellants made an affidavit that this residence or building had been moved off the lands of the appellants by Loraine Easterling and his two brothers, the defendants in the foreclosure action. Based on this affidavit Honorable J. Woodrow Lewis, Judge of the Fourth Judicial Circuit, on December 3, 1949, issued a rule to show cause in the foreclosure proceeding, directed to the defendants therein and to Loraine Easterling and Guy Wilhelm returnable before him on December 10, 1949, why they should not be required to replace said building on said premises; and postponed the sale of the property until salesday in January, 1950.

The return of the Easterling brothers and Wilhelm is not included in the record, but we must assume from the proceedings which followsd, and the order of Judge Lewis that the return did not raise the issue that even the long arm of a Court of Equity could not force them to move this house from the Wilhelm land back onto the land from whence it was moved.

Upon the filing of the Return to the Rule to Show Cause, Judge Lewis referred the case to Honorable E. W. Fountain, Judge of Probate for Darlington County, for the purpose of taking the testimony on the issues raised by the Rule and the Return. It is from the testimony so taken, and other statements in the record, that we have gleaned the facts hereinbefore set out.

There is not one word in the testimony taken before the Referee, Mr. Fountain, indicating who moved the house from the land on which it was first built, other than that it ap-

pears to be conceded that Loraine Easterling moved it, and onto land he had the right to acquire from Mr. Wilhelm by reason of a written option. Therefore, insofar as this special proceeding is concerned, James M. Easterling, Leland Richard Easterling and Guy Wilhelm were automatically absolved. And by Order of Judge Lewis dated December 20, 1949, in the light of the testimony, the Return of the parties thereto was adjudged sufficient and the Rule dismissed. In his Order dismissing the Rule, Judge Lewis stated: "I am convinced that equity and justice dictates the conclusion that this young man, Loraine Easterling, should not, under the circumstances in this record, be deprived of the building in question."

It is from the Order dismissing the Rule to Show Cause and adjudging the Return sufficient that the appeal comes to this Court.

If this were a controversy between Loraine Easterling and his two brothers, the mortgagors, his right to move the building in question, under the circumstances, could not be questioned. But the controversy here arises between the mortgagees and Loraine Easterling. So the issue to be determined is: When this building was constructed on this mortgaged land, with the consent and approval of the agent of the mortgagees (appellants), such agent being apprised of the understanding between the mortgagors and Loraine Easterling, and encouraging such construction, did the buiding upon its erection become a fixture and did the lien of appellants' mortgage then and there attach to the building?

There appears to be little doubt, if any, that "where improvements, which became a part of the freehold are put upon the mortgaged premises, either by the mortgagor or a purchaser from him, such improvements become subject to the lien of the mortgage, and constitute a part of the security for the mortgage debt." *Annely v. De Saussure,* 12 S. C. 488, 517; *Heath v. Haile,* 45 S. C. 642, 24 S. E. 300, at page 304. But, as was stated in *Montague*

*v. Dent,* 10 Rich. 135, 67 Am. Dec. 572. "So various are the considerations which enter into the interpretation of the law of fixtures, dictating varying and opposite conclusions as to the same or like articles, which may become the subject of controversy, that an adjudicated case may fail to be any authority, where the subject matter of contest may be the the same, as the particular case must be considered with reference to the relation of parties, * *."

In *Planter's Bank v. Lummus Cotton Gin Co.,* 132 S. C. 16, 22, 128 S. E. 876, 880, 41 A. L. R. 592, it is stated that the various relations under which the question of fixtures arises may be roughly divided into two classes; (1) Where the subject matter of the controversy has been placed upon the premises by the owner of the fee simple; (2) Where it has been so placed by one owning an estate less than a fee simple. In the classification of those coming within the two classes, a licensee is included in the second class.

We quote from *Planter's Bank v. Lummus Cotton Gin Co., supra:*

"In *Saye v. Hill,* 100 S. C. 21, 84 S. E. 307, the contest was between the grantees of the owner of a lot and a licensee. The lot had been conveyed by the owner to a railroad company for a depot site. The company did not use it for that purpose, but it was generally regarded as its property. The defendant obtained a license from the railroad company to erect a cotton gin, gritsmill, and planing mill on the lot. Buildings were erected, machinery installed, and wells bored and fitted with pumps and pipes for use in running the machinery. This was done with the knowledge and consent of the owner of the lot who had conveyed it, with the condition stated to the railroad company. The owner brought suit against the railroad company and recovered possession of the lot, upon the ground that it was not being used for the purpose for which it had been conveyed. It was adjudged in that suit that the railroad company's licensee have a certain time within which to remove the buildings

which he had placed on the lot. Nothing was said in the decree about the machinery. The former owner conveyed the lot to his daughters, and thereafter and after the licensee of the railroad company had been notified not to trespass upon the lot, he went upon it and removed an engine and gritsmill and took up and carried off the pumps and pipes out of the well. The grantees of the former owner then brought suit against the licensee for damages for the conversion of the property and for trespass. The plaintiffs based their claim for damages upon the contention that the engine and other machinery removed had been so attached to the freehold as to have become fixtures and passed to them under their deed to the lot. It appeared that the machinery had been attached to the real estate with bolts and timbers embedded in the ground as firmly as could have been done.

"The defendant requested the charge:

"That where a structure is placed upon land, not to promote the convenient use of the land, but to be used for some temporary purpose, external to the land, and the land is used only as a foundation, because some foundation is necessary for the business, then the structure and its belongings are not fixtures.'

"The trial judge refused this request, the jury found for the plaintiffs, and on appeal this court held error in such refusal, saying:

" 'While the manner in which a thing is attached to the soil may be of some value in determining whether it is a fixture or not, it does not afford an absolute or conclusive test. The intention with which it is so attached is usually a more controlling factor. Yet all the circumstances should be considered, especially as they throw light upon the intention. Houses are frequently built and expensive machinery installed therein with every appearance of permanency, yet it is done under a license from the owner of the soil, or under a lease thereof, and under agreement for and with

the intention of removal at the expiration of the license or lease. In such cases, they are not fixtures.' "

In *Mallory v. Agee*, 226 Ala. 596, 147 So. 881, 88 A. L. R. 1107, a much weaker case on the facts than the instant case, it was held that an agreement between the owner of realty then mortgaged and another, without the consent of the mortgagee, that such other may remove at any time an improvement to be placed by him upon the property, is effective, even if made after default, to keep such improvement free of the mortgage, where its removal will not impair the value of the realty as it existed at the time of the execution of the mortgage.

In the case under discussion, Loraine Easterling entered upon this land and constructed a home as a licensee, his agreement with the then owners of the fee being that if they could pay the mortgage thereon, he would be conveyed the land covered by his home site containing one acre, and if they couldn't pay the mortgage, he would be permitted to move this house therefrom. We think the record supports the findings of the Circuit Judge that L. N. Gilbert was the agent generally of the appellants in dealing with this land; that he not only acquiesced in such arrangement or agreement, but that he encouraged the construction of this building on the premises, and later undertook to lull the respondent, Loraine Easterling, into security; that the building was never constructed as incidental to the operation of the mortgaged premises for agricultural purposes; and that the security originally given for the mortgage indebtedness was unimpaired by the removal of the building.

As did the Circuit Judge, we have considered the issues in this case as if they were properly before the Court, raising no question as to procedure, and agree with him that equity and justice dictates the conclusion that Loraine Easterling, under the circumstances as disclosed by the record, should

not be deprived of the building which he removed from the mortgaged lands.

All exceptions are overruled, and the order and judgment appealed from is affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.