18243

SOUTH CAROLINA STATE HIGHWAY DEPARTMENT,
Respondent, v. WESTBORO WEAVING COMPANY,
Appellant
(137 S. E. (2d) 776)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Grady L. Patterson, Jr., Assistant Attorney General,* of Columbia, and *Riley & Riley,* of Greenville, *for Respondent,*

July 22, 1964.

Taylor, Chief Justice.

This proceeding was instituted by the South Carolina Highway Department to condemn for highway purposes certain property belonging to the Appellant, Westboro Weaving Company. Appellant being dissatisfied with the Condemnation Board award appealed to the Court of Com-

mon Pleas for Greenville County. The parties stipulate that the actual value of the land taken was $1,176.00. Testimony regarding damages to the remainder, resulting from the taking, was stricken on the grounds it was too remote and speculative, and a verdict was directed for Appellant in the amount of $1,176.00.

Appellant is a textile plant located in the City of Greenville and maintains a dyehouse and bleachery in connection with its operations. The land taken by the Highway Department was acquired in 1939 as a proposed site for pretreating its waste products should such become necessary. The evidence shows that the waste resulting from the operation of Appellant's dyehouse and bleachery is discharged without pretreatment into the public sewers operated by the Greater Greenville Sewer District. The regulations of the District, since approximately November, 1933, have required pretreatment of waste from textile plants before being discharged into the district's sewers, if in the opinion of the district, such is necessary for the safe, economical and efficient operation of the sewerage system. Approximately 10 years prior to trial, some communication was had between Appellant and the district relative to pretreating its waste but such has never been required and no negotiations thereabout have been had within the past 10 years.

The land taken by the Highway Department lies below the level of that whereon the plant is located, and waste therefrom could flow naturally without the necessity of pumping in the event a treatment plant was constructed thereon. Other land available to the mill for pretreating operations lies at an elevation above that occupied by the mill, which would necessitate the pumping of such waste should pretreatment of this waste be required.

Expert testimony was offered to show that the availability of such a site is one of the factors which would be taken into consideration by a prospective buyer, and that the absence

or lack of such a site would have an adverse effect on the market value of its remaining property by $15,000.00. The proffered testimony was stricken by the lower court on the ground that it was too remote and speculative.

Appellant owned this site for a period in excess of 20 years prior to institution of the condemnation proceeding and had never constructed such a plant and has no plans at the present or the immediate future of doing so.

Section 33-135, Code of Laws of South Carolina, 1962, provides: "In assessing compensation and damages for rights-of-way, only the actual value of the land to be taken therefor and any special damages resulting therefrom shall be considered," and Section 33-136 requires that "* * * benefits to be derived by reason of the proposed road construction * * * shall be taken into consideration in determining the amount of compensation, if any, to be awarded to such person and due allowance made therefor." The above Code sections prescribed the yardstick for determining just compensation. *Johnson v. South Carolina State Highway Department,* 236 S. C. 424, 114 S. E. (2d) 591.

"* * * In estimating the value of property condemned, all of the uses to which it may be applied, or for which it is adapted, which affect its value in the market, are to be considered, and not merely the condition it is in at the time and the use to which it was then applied by the owner. * * *" *City of Orangeburg v. Buford et al.,* 227 S. C. 280, 87 S. E. (2d) 822.

The parties agreed to the actual value of the land taken; therefore, the only remaining issue to be determined in the lower Court was whether any special damages resulted to the remainder of the land by reason of such taking.

*In South Carolina State Highway Department v. Bolt et al.,* 242 S. C. 411, 131 S. E. (2d) 264, this Court said: "In addition to the actual value of the land taken, where a portion of a tract of land is taken for such public use,

the land owner is entitled to compensation for any special damages resulting to the remainder thereof. The special damages referred to in the above statutes relate to injury or damage to the remainder of the property from which a portion is taken. They would include any damage or any decrease in actual value of the remainder of the landowner's property which are the direct and proximate consequence of the acquisition of the right-of-way. In other words, as a general rule, special damages include all injuries or damages which cause a diminution in the value of the remaining property. As stated in 18 Am. Jur. 905, Section 265:

" 'When part of a parcel of land is taken by eminent domain, the owner is not restricted to compensation for the land actually taken; he is also entitled to recover for the damage to his remaining land. In other words, he is entitled to full compensation for the taking of his land and all its consequences; and the right to recover for the damage to his remaining land is not based upon the theory that damage to such land constitutes a taking of it, nor is there any requirement that the damage be special and peculiar, or such as would be actionable at common law; it is enough that it is a consequence of the taking. The entire parcel is considered as a whole, and the inquiry is, how much has the particular public improvement decreased the fair market value of the property, taking into consideration the use for which the land was taken and all the reasonably probable effects of its devotion to that use.'

"Therefore, where a portion of a tract of land is taken, the damages recoverable in an eminent domain proceeding brought under the foregoing statutes are limited to the value of the land actually acquired for the right-of-way and any injury resulting to the remaining property. * * *"

"On the other hand, possible uses which are so remote and speculative and which would require the concurrence of so many extrinsic conditions and happenings as to have no perceptible effect upon present market value must be excluded from consideration. * * *

To warrant admission of testimony as to the value for purposes other than that to which the land is being put, or to which its use is limited by ordinance at the time of the taking, the landowner must first show: (1) that the property is adaptable to the other use, (2) that it is reasonably probable that it will be put to the other use within the immediate future, or within a reasonable time." Nichols on Eminent Domain, Vol. 4, Section 12.314, p. 140.

"Evidence may be adduced· showing only the naturally adapted uses of the property in its present condition. The owner's actual plans or hopes for the future are completely irrelevant. Such matters are regarded as too remote and speculative to merit consideration." Nichols on Eminent Domain, Vol. 4, p. 152.

Evidence is not admissible "for the purpose of showing special damage sustained by the company as the result of the frustration of its plans for development; and if the evidence is admitted in the further trial of the case, this should be made clear by proper instructions. The measure of damages which the company is entitled to recover is the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken, not any special damage it may have suffered through frustration of its plans." *West Virginia Pulp & Paper Co. v. United States,* 4th Circuit, 200 F. (2d) 100.

In the recent case of *South Carolina State Highway Department v. Southern Railway Company,* 239 S. C. 1, 121 S. E. (2d) 236, this Court stated:

"Plaintiff also contends error in admitting into evidence testimony to the effect that defendant had established minimum requirements or standards for a safe and proper track bed.

"The track bed in question had never been standardized and defendant's witnesses could give no time when it would, if ever, be improved to meet such standards. On the other hand, the testimony is to the effect that money is

tight and it would be at least several years, if ever, before the improvements could be made. This evidence as to improvements which might be made in the future is too speculative and remote. *Southern Indiana Gas and Electric Company, [v. Jones,* 240] Ind. [434], 166 N. E. (2d) 127, and should be excluded."

In instant case, the value of the land taken is stipulated by the parties, but Appellant contends that the market value of the plant has been depreciated by the taking of the property whereon it could, some time in the future, construct a pretreatment plant with gravity flow.

Appellant's manager testified that he has been manager for 35 years, that the site in question had been acquired in 1934 "for a pretreatment plant of our waste from the bleaching and dyeing." He further testified:

"Q. Do you have any definite plans in the immediate future for enlargements or additions to your plant?

"A. Well, that's something you can't answer.

"The Court: Answer the question.

"A. At the present, no.

\* \* \*

"Mr. Todd: What I want to ask him is this: Has there been any increase in your dyeing and bleaching operations over the last few years?

"A. Oh, yes.

"Q. The greater portion of your business has been dyeing and bleaching, is that correct?

"A. Yes, sir."

Since the purchase of the site in question approximately 25 years ago, it has never been used to treat waste products. On the contrary, they have been piped into the sewer lines of the Greater Greenville Sewer District without being pretreated, and Appellant has no plans to construct in the immediate future, within a reasonable time, or possibly ever, such plant. The site had been acquired as insurance against

the day, if ever, when it would be required to pretreat its waste, which is too remote and speculative.

We are of opinion that there was no error in the trial Judge excluding such evidence as being too remote and speculative, that the judgment appealed from should be affirmed; and it is so ordered.

Affirmed.

Moss and Lewis, JJ., concur.

Bussey and Brailsford, JJ., dissent.

Brailsford, Justice (dissenting).

I respectfully dissent. Well qualified expert witnesses, testified, in general, that it is highly desirable for a manufacturing plant such as that owned by appellant to have a suitable site for a facility for pretreatment of industrial waste, even where disposal is being made in public sewers without pretreatment, as insurance against a change in policy by the sewer commission requiring pretreatment. They testified specifically that the loss of the property taken, which was suitable for this purpose, resulted in a substantial depreciation in the present market value of appellant's plant. The parties are in agreement as to the market value of the property taken, and no attempt is being made to bolster that value on the speculation that it will be utilized as the site of a pretreatment facility. Instead, the testimony dealt with the impact which the loss of the site had on the *present* market value of the remaining property. Since the Greater Greenville Sewer District has the right to require pretreatment whenever in its judgment such should become necessary, it seems entirely logical to me that a prospective purchaser would be vitally interested in the means at hand to meet such a demand if it should be made. This is the tenor of the testimony. Perhaps the demand will never be made, but the contingency and the impairment of the means at hand to meet it result, logically and according to the expert testimony, in depreciation in market value. This is *present,*

instead of remote, and no more speculative than *any* opinion testimony as to depreciation in the market value of real estate.

I would reverse the judgment appealed from.

BUSSEY, J., concurs.