18989

SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Appellant v. Joshua J. BRYANT, Respondent

(171 S. E. (2d) 349)

*Messrs. Daniel R. McLeod,* Attorney General, and *Irvin D. Parker,* Assistant Attorney General, of Columbia, *for Appellant,*

*Messrs. Paul A. Sansbury* and *Kilgo & Want,* of Darlington, *for Respondent,*

December 1, 1969.

BUSSEY, Justice.

This is an appeal by the Highway Department from an order refusing a motion for a new trial after a jury verdict in a condemnation proceeding in Darlington County. The condemnee, Bryant, was the owner of a farm containing 50.4 acres of land, lying to the east of the intersection of State Highway 403 and secondary road number 487, the latter being an improved farm-to-market road from Lamar to the Philadelphia Community in Darlington County. While the record does not disclose the precise distances, an official highway department map indicates that such farm is some eleven to twelve miles from Darlington and some thirteen miles from Hartsville.

The Department condemned, for the purpose of constructing Interstate 20, the northwest corner of this farm, which contained 4.1 acres, the condemned portion having a frontage of something more than 500 feet on S—487. A qualified expert witness for the condemnee testified that in his opinion the value of the condemned tract was $4,000.00, and that the condemnee had sustained severance damages in the amount of $1,350.00. Three witnesses testified for the Department and the highest value fixed by any of these was $1,640.00. The jury verdict was in the amount of $4,250.00. The landowner contended and offered evidence to the effect that the highest and best use of the condemned land was for rural residential purposes. The contention of the Department was that the highest and best use thereof was farm land. All the witnesses for the Department so testified, but two of them were frank to admit that there was demand for rural residential sites fronting on improved farm-to-market roads such as S—487 in that area.

The Department first contends that Crouch, the witness for the condemnee, was erroneously allowed to express an opinion as to the value of the condemned tract when such opinion was arrived at by estimating the number of lots into which the tract could be divided, assigning a value to each lot, and adding such for a total valuation. In the course of the examination of the witness Crouch, the following occurred:

"Q. You have testified that the highest and best use of this land is for residential purposes?

"A. Yes, sir.

"Q. Have you reached a conclusion as to the value of the 4.1 acre tract being taken? The value of that tract?

"A. Yes, sir.

"Q. What is your conclusion?

"A. Well, in my opinion, it would be based on the number of lots that you could derive from what * * *.

"Objection by Mr. Parker: Your Honor, we object to that testimony as to the number of lots that can be taken from this as contrary to the law in this state.

"The Court: He can express an opinion.

"Q. What is your determination of the value of the 4.1 acre tract being taken? The total value?

"A. May I tell you how I arrived at it or do you want me to tell you the definite * * *.

"Q. I would rather you give me your opinion as to the value of that tract.

"A. I would say four thousand dollars."

Subsequent to the foregoing no further objection was made to the testimony of the witness. It is at least doubtful whether the objection as phrased was sufficient to preserve the question now argued by the Department, but, in any event, the record does not show that the witness Crouch did what the Department now contends he did, to-wit: divide the acreage into lots, assign a value to each lot, and then add such values to arrive at a total.

The Department's contention is predicated upon the following proposition of law quoted from Nichols on Eminent Domain, Vol. 4, Section 12-3142 (1),

"It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush and boulders. The measure of compensation is not, however, the aggregate of the prices of the lots into which the tract could be best divided, since the expenses of clearing off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all the lots are disposed of cannot be ignored and is too uncertain and conjectural to be computed."

We have no reason here to question the soundness of the foregoing proposition, but think it is simply not applicable to the instant situation. The witness was not testifying as to a proposed subdivision or as to the aggregate value of improved lots which might be sold after much expense. Although the witness used the term "lots", his testimony otherwise reflects that what he was actually referring to was unimproved residential sites bordering on improved highways in the area. In fact, testimony elicited from the witness Crouch, on cross-examination, as well as some of the testimony of witnesses for the Department, indicated a tendency to use the terms "lot" and "acre" somewhat interchangeably in referring to unimproved, rural residential sites. When the testimony of Crouch is considered as a whole, it is simply to the effect that in his opinion, the unimproved acreage was worth approximately one thousand dollars per acre for unimproved rural residential sites.

The admission or exclusion of evidence is a matter which is largely within the sound discretion of the trial judge. Under the foregoing circumstances, we conclude that there was neither abuse of discretion on the part of the trial judge nor prejudice to the Department.

At the conclusion of the Judge's charge, the Department orally requested him to charge additionally as follows:

"Before you can find that the highest and best use of land is for subdividing, you must find that the property is adaptable to that use and that it is reasonably probable that it will be put to that other use within the immediate future or within a reasonable time."

The Department's contention that it was entitled to such charge is based on the following quotation from 29A C. J. S. Eminent Domain § 160, p. 685,

"Mere speculative, conjectural, imaginary, or remote uses, or value, cannot be considered; there must be some probability that the property will be used within a reasonable  time for the particular use to which it is adapted."

Nichols on Eminent Domain, Vol. 4, Sec. 12.314, page 140 contains similar language which was quoted with approval in the majority opinion in *S. C. State Highway Department v. Westboro Weaving Company,* 244 S. C. 516, 137 S. E. (2d) 776 (1964). The *Westboro* case is factually inapposite here. There the court was dealing with an issue of severance damage to the remainder of the condemnee's property and a contemplated use of the portion which was condemned.

To quote further from the C. J. S. treatise relied upon by the Department, we find at 29A C. J. S. Eminent Domain § 160, p. 676, the following:

"The value of property condemned is not to be estimated simply with reference to the condition in which the owner has maintained it, or to the use to which it is applied at the time, or to any particular use, but with reference to any and all uses or purposes for which it is suitable, or to which it is reasonably and lawfully adapted or adaptable, or convertible."

"The best or highest use, or the most valuable, advantageous, or profitable, use, to which property taken for the

public use or purpose is reasonably, practically, and lawfully adapted or available, or for which it is needed, or is likely to be needed, in the reasonably near future, should be considered, or may even be used as the basis for conmpensation, best and highest use meaning the most favorable use to which property may reasonably be put in the not too distant future; and the fact that at the time of the taking the owner of the property is not making the best use thereof does not deprive him of the market value based on the best or highest use. All other rules that tend to prevent an inflationary build-up of value where no apparent potential exists must be considered as subordinate to this end rule, and are to be applied only in appropriate situations."

However sound and appropriate the rule relied upon by the Department might be in other situations, it is here inappropriate and the requested charge was correctly refused for more than one reason. The request referred to the use of the land "for subdividing". While use of the condemned acreage for more than one residential site would, of course, in a literal sense, constitute a "subdividing", there was no testimony whatever as to either an improved or contemplated subdivision in the normal meaning of that term.

Additionally, the condemnee had testified, without objection, that he had owned the property since 1940; that he had never tried to sell any of it; that he had been approached by would-be purchasers; that he didn't care to sell at all, and that he had no intention whatever of selling any rural residential lots or sites. From his testimony, it was obviously not probable that the condemned acreage would have been put to use for rural residential purposes within the foreseeable future. That the condemnee had no intention whatever of selling any portion of his property should not deprive him of his right to be compensated for it at its fair market value based on the highest and best use thereof. Under the circumstances of the case, the requested charge would, in effect, have told the

jury that the condemnee could not recover the value of the condemned acreage for rural residential purposes, even though such was the highest and best use thereof, since it was obvious that he had no intention of putting the property to such use within the immediate future or within a reasonable time had such not been condemned. Such a charge would have at least bordered upon a charge on the facts and, in any event, been erroneously prejudicial to the condemnee.

The remaining contention is that there was error on the part of the trial judge in settling the case on appeal. The contention is that the statement of the case, as ordered by the trial judge, narrowed the scope of the appellant's "objection to the testimony of Crouch as shown in the record." Error, if any, in this respect is rendered harmless by the fact that we have quoted verbatim, and in context, the appellant's objection and fully considered it.

The exceptions of the appellant are, in our view, without merit, and the judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.