2013

CITY OF NORTH CHARLESTON, Appellant-Respondent
v. Janie M. CLAXTON and William L. Claxton, Respondents-Appellants.

(431 S.E. (2d) 610)

Court of Appeals

*James E. Gonzales*, of *Gonzales & Gonzales*, North Charleston, *for appellant-respondent.*

*Frank M. Cisa*, North Charleston, *for respondents-appellants.*

Heard Mar. 23, 1993; Decided May 17, 1993.

Reh. Den. July 14, 1993.

GARDNER, Judge:

The City of North Charleston (the City) commenced a condemnation proceeding against landowners Janie and William Claxton (the Claxtons). The Claxtons requested a jury trial to determine the value of the condemned property. The jury returned a verdict for the Claxtons for $79,500. The City made a motion for new trial nisi and the Claxtons moved for an award of attorney fees. The trial judge denied the motion for new trial and awarded the Claxtons $17,654.15 in attorney fees. Both parties appeal. We affirm.

## FACTS

In 1985 Centre Pointe announced plans for a private 394-acre development at the intersection of I-26 and Mark Clark Expressway in North Charleston. Centre Pointe originally planned to build the Centre Pointe Mall with peripheral commercial properties. In connection with this plan, Centre Pointe donated 32 acres to the City conditioned upon the City's obligation to build a coliseum on the property within seven years after the gift. Under this original plan, the Claxtons' property was not needed for the City's Project, including the coliseum. The Claxtons' property, one of nine lots, adjoined one property line of the future Centre Pointe Mall.

The Army Corps of Engineers issued a cease and desist order that stopped construction of the Centre Pointe private development. Approximately half of the private development was in wetlands. The property donated to the City, however, was highland not subject to the cease and desist order. Centre Pointe developers negotiated a settlement with the Corps of Engineers that would allow Centre Pointe to continue its private development. A cornerstone of this settlement was a requirement that the City not build its project on the 32 acres of highland donated by Centre Pointe.

The City agreed to a land swap provided it received a suitable 32-acre site on what had been Centre Pointe's private development under the original plan. The City's new site contained only 29 acres, thus additional acreage had to be ac-

quired. This additional acreage included the Claxtons' property and eight other lots adjoining the Centre Pointe Mall property.

At trial, the Claxtons' expert witness appraised their property's worth at $90,000. The expert used comparables to support his opinion; primarily, the sales of the Judy and Kinard lots to Centre Pointe for $80,000 and $65,000, respectively. The City's expert testified that on the day of the taking the property was worth $72,500, but attributed $18,500 to the influence of the future plans for the area and determined the uninfluenced value at $54,000.

## DISCUSSION

First, the City contends that the trial court erred in denying a new trial because the jury verdict was based on testimony regarding the sale of comparable properties which the City claims were bought under compulsion. The compulsion allegedly stemmed from the fact that Centre Pointe had to have the land to swap with the City or risk its multimillion dollar project.

Generally, in establishing the fair market value of the condemned property, it is permissible to use expert testimony based on "comparable" sales in the area. This includes the price paid for similar property in the vicinity within a reasonable time of the condemnation hearing. S.C. Code Ann. § 28-2-340(A)(5) (1991). Additionally, if an expert is qualified, the sufficiency of the foundation of his opinion on value is ordinarily a question of weight for the jury, not a basis for excluding the evidence. *Duke Power Co. v. Opperman,* 266 S.C. 99, 221 S.E. (2d) 782 (1976). Thus, on these facts, where the expert's opinion was based on comparables, whether or not the comparable properties were sole under compulsion is a question of fact for the jury.

A factual finding of the jury will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jury's finding. *Townes Associates, Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E. (2d) 773 (1976). In this case, the trial court charged the jury that "[f]air market value is the price a willing buyer would pay and a willing seller would accept in the ordinary course of business *when neither person is being compelled to act."* (Emphasis added.)

There is testimony of record regarding the voluntariness of the transaction between the buyer and sellers of the comparable lots. Based on the verdict, it is evident that the jury found this testimony credible and that the comparable sales were not made under compulsion. We hold that the record reasonably supports this finding, and that the trial court did not err in declining to grant a new trial on this point.

Similarly, the City argues that the verdict resulted ▪ from a failure to adjust downward for the enhancement in value produced by the property being within the scope of the project.

The Scope of the Project Rule was created to "prevent escalated or depressed prices of purchases due to the condemnation project when later acquired land was initially contemplated by the project." *South Carolina State Highway v. Carodale Assocs.*, 268 S.C. 556, 235 S.E. (2d) 127 (1977). In *Carodale*, the Supreme Court held the rule did not apply, even if it were the law in South Carolina. *Carodale* makes it clear that South Carolina has yet to adopt the Scope of the Project Rule. Additionally, by statute a compensation award cannot be increased by an increase in value resulting from the placement of a "public works project" on the condemned property. S.C. Code Ann. § 28-2-350 (1991). In this instant case, the jury charge provided:

> The value given to the subject property before the taking on December 11, 1989, can not contain any enhancement or increases in value attributable to the project if the subject property is probably within the scope of the project from the time the city was committed to it. Likewise, the value given the subject property can not be decreased by anything attributable to the project.
>
> Now, when I refer to the project, I refer to the coliseum, the civic center, placed and designated on the map where it is going to be placed.

Again, we hold that the trial judge appropriately charged the jury regarding the scope of the project, and that there is sufficient evidence of record to support the jury's finding.

Next, the City contends that the trial court erred in ▪ admitting testimony of value, based in part, on speculative development plans. It is well settled that compen-

sation is not limited to the value of the property as used by the owner at the time of condemnation. Rather, the owner is entitled to the value of the property under its most advantageous or profitable use, including any use reasonably anticipated in the near future. *Carolina Power & Light Co. v. Copeland,* 258 S.C. 206, 188 S.E. (2d) 188 (1972). *Cf. South Carolina State Highway Dept. v. Westboro Weaving Co.,* 244 S.C. 516, 137 S.E. (2d) 776 (1964) (testimony regarding potential future improvements for which funds had not been appropriated was too speculative and remote to be admissible).

The record reflects that at the time of the taking the Centere Pointe project was in some difficulty. However, when one considers the investment made and plans in progress at that time, future growth in the area could hardly be considered speculative. We hold that the testimony was admissible.

Lastly, S.C. Code Ann. section 28-2-510(B)(2) (1991) allows for the prevailing party in this case to be awarded attorney fees. This determination is based on a comparison of the verdict and the highest valuation of the property given by each party at trial. *Id.* The trial judge found that the Claxtons prevailed. The City argues that it prevailed and that it should be awarded attorney fees.

The Claxtons presented testimony that the land's highest worth was $90,000. The City contends that its highest estimate on the land was $72,500; however, the City's expert testified that the highest value without the influence of the coliseum was $54,000, and that the influence of the coliseum enhanced the value to $72,500. Throughout the trial the City maintained that by statute, the fact finder could not consider the influence of a public works project such as the coliseum. The jury determined that the Claxtons should receive $79,500 in compensation. We hold that the City cannot be allowed to use their $72,500 estimate as both sword and shield and, therefore, the Claxtons' $90,000 estimate is closer to the $79,500 verdict than the City's $54,000 estimate. The trial judge correctly ruled that the Claxtons were the prevailing party.

The Claxtons also appeal. First, they maintain that the trial court should have allowed testimony regarding the economic loss they suffered incident to the removal of their mobile homes from the condemned lot. In oral argu-

ment, the Claxtons relied on S.C. Code Ann. section 28-2-30(11) (1976) which provides:

> "Improvement" includes any building or structure, and any facility, machinery, or equipment *that cannot be removed from the real property on which it is situated without substantial damage to the real property or other substantial economic loss.* (Emphasis added.)

The term "improvement" is used primarily in section 28-2-340 which describes evidence admissible in condemnation actions. The Claxtons claim they suffered "substantial economic loss" when their mobile homes were removed from the condemned lots and, therefore, they should be allowed to present evidence of those removal costs. We disagree.

It is well-settled law in this state that when land is taken under the power of eminent domain, the ownership of personalty kept on the premises taken, but not permanently affixed thereto, is not affected. Moreover,

> A majority of the State Courts hold that, in the absence of a statute or agreement to the contrary, the removal costs of . . . personal property . . . cannot be considered as an element of damage, since such loss is not a taking of property. *Creative Displays, Inc. v. South Carolina Highway Dept.*, 272 S.C. 68, 72-73, 248 S.E. (2d) 916, 918 (1978) (Lewis, C.J., dissenting) *quoting South Carolina State Highway Dept. v. Smith*, 253 S.C. 639, 642, 172 S.E. (2d) 827, 828 (1970) (Citations omitted).

The proposition espoused in *Creative Displays, Smith* and other cases, directly contradicts the interpretation which the Claxtons would have this Court give section 28-2-30(11). Such a construction would overrule this existing case law, an action which is beyond the authority of this Court.

The only question remaining is whether the mobile homes are fixtures or personal property. A chattel does not become a fixture by mere affixation to realty. Criteria for determining whether an item remains personalty or becomes a fixture when affixed to realty includes: (1) the mode of attachment; (2) the character of the structure of the article; (3) the intent of parties making the annexation; and (4)

the relationship of the parties. *Creative Displays*, 272 S.C. at 72, 248 S.E. (2d) at 918.

Mobile homes have been held to be both fixtures and personal property.[1] In this case, the record reflects that the Claxtons' trailers were connected to utility services. There is no evidence, however, that the trailers had other significant attachments to the property such as permanent foundations or additions. Based on these facts, we hold that the Claxtons' mobile homes are not fixtures, and accordingly, uphold the trial court's refusal to admit evidence of the Claxtons' relocation costs.

■ The landowners were represented by three attorneys who billed 260.3 hours for a total of $30,078.15 in attorney fees. The trial judge allowed only $17,654.15 of the $30,078.15 requested because much of the work outlined in the attorneys' fee statements reflected an unreasonable duplication of efforts. We hold that S.C. Code Ann. section 28-2-510(B)(1) (1976) gives the trial judge discretion to determine reasonable attorney fees. it states:

> A landowner who prevails in the trial of a condemnation action, in addition to his compensation for the property, may recover his reasonable litigation expenses. . . . If requested by a party or on its own motion, the court shall hear the parties with respect to the matters raised by the application and shall determine the amount of litigation expenses to be awarded. . . . The court, in its discretion, may reduce the amount to be awarded pursuant to this section, or deny an award, to the extent that the landowner, during the course of the action, engaged in conduct which unduly and unreasonably protracted the final resolution of the action.

---

[1] *In re Rebel Mfg. and Mktg. Corp.*, 54 B.R. 674 (Bankr. D. S.C. 1985), a bank argued that the sale of a mobile home was subject to a mortgage on the realty because it was a fixture. The court held that the mobile home was a fixture because various substantial structures and trees surrounding it would have been severely damaged if the mobile home was relocated. Additions, including a screened porch, sun deck and swimming pool, had been added to the mobile home. However, in determining a lien priority, the same court held that a mobile home was personal property in *In re Avery*, 7 B.R. 28 (Bankr. D. S.C. 1980), even though the mobile home was connected to utilities, set on concrete blocks and had concrete steps. In *In re Avery*, the tongue and tow had been removed, yet it had no permanent foundation.

We find no abuse of discretion and note that the trial judge made specific findings of fact for each factor set forth in *Collins v. Collins,* 239 S.C. 170, 122 S.E. (2d) 1 (1961), as required by the recent case of *Blumberg v. Nealco, Inc.,* — S.C. —, 427 S.E. (2d) 659 (Sup. Ct. 1993) *modifying Blumberg v. Nealco, Inc.,* — S.C. —, 416 S.E. (2d) 211 (Ct. App. 1992).

For the foregoing reasons, we affirm.

Affirmed.

SHAW and BELL, JJ., concur.