No signature by witness

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT 
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Wells Fargo Bank Minnesota, National Association,
FKA, Norwest Bank Minnesota, 
 National Association, as Trustee, for the registered Holders of Option 
 One Mortgage Loan Trust 1999-C, Asset-Backed Certificate, Series 1999-C, 
 without recourse,        Appellants,
 
 
 

v.

 
 
 
Peggy M. Luther and the South Carolina Department of Public Safety, and 
 all unknown persons with any right, title or interest in the mobile   
 manufactured home described herein being a class designated as John Doe 
 now known to be Denise Gardner,       
Respondents.
 
 
 

Appeal From Kershaw County
Jeffrey M. Tzerman, Master-In-Equity

Unpublished Opinion No. 2005-UP-123
Heard January 11, 2005  Filed February 
 17, 2005

AFFIRMED

 
 
 
 Robert J. Thomas, of Columbia, for Appellant.
Rolland E. Greenburg, III and William L. Todd, both of Columbia, 
 for Respondent.
 
 
 

PER CURIAM:  This appeal 
 arises from an order allowing foreclosure on a piece of real property but not 
 on a mobile home located on that property.  We affirm. 
FACTS
In 1996, Denise Gardner acquired sole 
 ownership of a mobile home that she placed on a piece of vacant real estate 
 in Lugoff.  Both Denise and her mother, Peggy Luther, had an ownership interest 
 in the real estate. [1]   Peggy moved into the mobile 
 home with Denise after Denise was involved in an automobile accident.  
While Peggy was living with Denise, an 
 agent of Approved Federal Savings Bank (Bank) contacted Peggy offering to 
 consolidate her various debts by refinancing her real property.  Peggy agreed 
 and understood the consolidation transaction was going to be a refinance on 
 her property.  Pursuant to section 37-10-102(a) of the South Carolina Code (Supp. 
 2003), the Bank provided Peggy with a notice that explained she could choose 
 her own closing attorney and insurance agent.  Because Peggy indicated she had 
 no preference in legal counsel, Brett F. Kline was chosen by the Bank and served 
 as Peggys counsel.  Kline met with Peggy twice in her home during this transaction.  

In order to effectuate the refinancing, 
 Denise signed a limited warranty deed on September 3, 1999, conveying her interest 
 in the real estate to Peggy, such that Peggy would become the sole owner of 
 the real estate.   While the face of the deed did not purport to transfer the 
 mobile home, the legal description of the deeded property which was contained 
 on a separate paper and attached to the deed, included a statement that the 
 transfer included all improvements on the real estate and that it is the borrowers 
 intent that the mobile home loses its nature as personalty and becomes realty.  

Peggy also executed a promissory 
 note in favor of the Bank [2] 
 for $65,500 on that same day.  The promissory note was secured by a mortgage 
 on the real estate.   The legal description of the mortgaged property also stated 
 that the transfer included all improvements and that it is the borrowers intent 
 that the mobile home loses its nature as personalty and becomes realty.  Peggy 
 also executed an Affixation Affidavit Regarding Manufactured Home, and a manufactured 
 housing rider to the mortgage, in which Peggy attested to the permanent affixation 
 of the mobile home to the real estate.  
Peggy testified that she was seventy 
 years old, did not necessarily understand what she was signing, did not finish 
 the ninth grade, and was in poor health.  Peggy also testified that at the time 
 she signed these papers, she believed that the land and the mobile home belonged 
 to her daughter, Denise.  During Peggys deposition, Peggy represented that 
 she knew she was signing the papers in order to have the trailer refinanced, 
 but that she did not and never had owned the mobile home.  Peggys deposition 
 testimony also revealed that she acknowledged signing the papers, but no one 
 was there to witness her signature.  Peggy testified that her attorney, Kline, 
 told her not to worry about it, that he was going to take it back to the office, 
 and get somebody to witness it there.  The documents revealed Robert V. Harrelson 
 to be the subscribing witness.  
Denise testified that it was never her 
 intent to transfer the mobile home to her mother, and that she told Kline that 
 she would not sign anything that could ever cause her to lose her mobile home.  
 Denise also testified that she thought her mother was borrowing money on the 
 land and not the mobile home.  The loan proceeds were used to pay off Peggys 
 medical bills and to pay off money Denise owed on the mobile home.  
On December 1, 2000, Peggy defaulted 
 on the promissory note and mortgage.  The Bank brought a declaratory judgment 
 action seeking a determination that the mobile home was subject to the mortgage 
 and an action for foreclosure of the mortgage.  The case was transferred to 
 the master-in-equity.  
The master issued an order on February 
 11, 2004, finding that each page of the mortgage was initialed by Peggy except 
 the legal description, which was prepared and attached to the document after 
 the execution of the Mortgage and was never presented to or reviewed by Peggy.   
 The master also found, in relevant part, that (1) the deed and mortgage were 
 not properly witnessed, (2) the mortgage was invalid as a legal mortgage, (3) 
 the deed failed to transfer title to the mobile home to Peggy, (4) the Bank 
 failed to perfect a lien on the mobile home, (5) the failure to perfect was 
 fatal to the Banks claim that it was entitled to foreclose on the mobile home 
 as an improvement located on the real property, and (6) the Bank was entitled 
 to foreclose pursuant to an equitable mortgage against the real estate only.  
 The Bank appeals the masters failure to include the mobile home in the equitable 
 mortgage. 
STANDARD OF REVIEW
Actions for foreclosure or the cancellation 
 of instruments are actions in equity.  Wilder Corp. v. Wilke, 324 S.C. 
 570, 576-77, 479 S.E.2d 510, 513 (1996).  Since the master-in-equity heard 
 this equitable action without appeal to the circuit court, the appellate court 
 may find the facts on appeal in accordance with its own view of the preponderance 
 of the evidence.  Id.  However, the appellate court should not disregard 
 the findings of the master who saw and heard the witnesses and was in a better 
 position to judge their credibility.  Id.
LAW/ANALYSIS
The Banks sole argument on appeal 
 is that the master erred in concluding that the mobile home was not a fixture 
 and not subject to the equitable mortgage.  We disagree.  
The Bank argues that it was the intent 
 of the parties to subject the mobile home to the equitable mortgage and permanently 
 affix the mobile home to the real estate.  In making this argument, the Bank 
 asserts the master erred in making certain findings of fact.  First, the Bank 
 alleges the master erred in omitting from the order the fact that the legal 
 description of the deeded property included the mobile home.  Second, the Bank 
 alleges that the master erred in finding the legal description, which included 
 the mobile home, was prepared and attached to the mortgage and deed after 
 Peggy signed the papers.  Third, the Bank argues the master erred in finding 
 that Denise testified the mobile home at no time was to be transferred or included 
 in the contemplated loan.  We disagree and find that the facts, in accordance 
 with our own view of the preponderance of the evidence, support the order of 
 the master-in-equity.
Initially, we find the Banks equitable 
 mortgage did not extend to the mobile home.  For an equitable lien to arise, 
 there must be a debt owing from one person to another; specific property to 
 which the debt attaches; and an intent, expressed or implied, that the property 
 will serve as security for the payment of the debt.  First Federal Sav. and 
 Loan Assn of Charleston v. Bailey,  316 S.C. 350, 356, 450 S.E.2d 
 77, 80-81 (Ct. App. 1994). If a mortgage is actually signed by the mortgagor 
 and intended to secure the debt, it can be treated as an equitable mortgage. 
 See Stelts v. Martin, 90 S.C. 14, 16-17, 72 S.E.2d 550, 551 (1911);  
 Bryce v. Massey, 35 S.C. 127, 142, 14 S.E. 768, 774 (1892).
In this case, there is no doubt that Peggy 
 owes a debt to the Bank.  Moreover, it is uncontested that Peggy sought to secure 
 the debt with her real estate.  However, we do not find that Denise or Peggy 
 intended for the mobile home to serve as security.  The Bank does not appeal 
 from the masters finding that the deed purporting to transfer the mobile home 
 from Denise to Peggy was invalid.  This unappealed ruling becomes the law of 
 the case and precludes consideration of the validity of the deed on appeal.  
 See ML-Lee Acquisition Fund, L.P. v. Deloitte & Touche,  
 327 S.C. 238, 241, 489 S.E.2d 470, 472 (1997).  As a result, Peggy never 
 had an ownership interest in the mobile home to subject to a mortgage.  Cf. 
 McDavid v. McDavid, 187 S.C. 127, 139, 197 S.E. 204, 209 (1938) 
 (If one has a legal right to sell land, he would likewise have the right to 
 mortgage it.).  
Therefore, we must look to the intent of 
 Denise, as sole and exclusive owner of the mobile home, to see if she entered 
 into any transaction that would subject her mobile home to the Banks equitable 
 mortgage.  Denise, however, owes no debt to the Bank.  The debt owed to the 
 Bank is owed solely by Peggy.  While Denise signed a deed that purported to 
 transfer her interest in the mobile home to her mother, this deed was found 
 to be invalid.  See ML-Lee Acquisition Fund, L.P.,  327 S.C. 
 at 241, 489 S.E.2d at 472.  Moreover, the legal description of the deeded property 
 included improvements and a statement that it is the borrowers intent that 
 the mobile home loses its nature as personalty and becomes realty.  This legal 
 description was never signed or initialed by Denise, nor does it evince Denises 
 intent; rather, it merely expresses Peggys intent as borrower.   
Although the Bank asserts that the parties 
 were represented by attorney Kline, implying that Denise knew the legal description 
 on the deed included the mobile home and reflected her intent to transfer interest 
 in the mobile home, the record does not reflect that attorney Kline represented 
 Denises interests.    Rather, the record demonstrates that Kline was hired 
 to represent Peggys interests and served as Peggys legal counsel.  
Denise expressed her intent to remain the 
 owner of the mobile home to Kline and testified that she thought her mother 
 was borrowing money on the land.  Thus, we find Denise did not intend to secure 
 Peggys debt with her mobile home and as a result, the equitable mortgage was 
 properly limited to the real estate.  
Additionally, we find the mobile home 
 was not a fixture to the real estate and thus not subject to the equitable mortgage.  
 A mobile home is generally classified as personal property, such that a security 
 interest may be perfected by listing the interest on the certificate of title.  
 Brockbank v. Best Capital Corp., 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000).  
 However, a mobile home may cease being personal property by annexation to real 
 estate and may be sold with the real estate.  Id.   In such a case, the 
 mobile home is considered a fixture and may be subject to any mortgage on the 
 real estate.   See In re Rebel Mfg. And Mktg. Corp., 54 B.R. 674 
 (Bankr. D.S.C. 1985); Gilbert v. Easterling, 217 S.C. 267, ­­275, 60 
 S.E.2d 595, 597 (1950).  
 A mobile home does not become a fixture 
 by mere affixation to realty.  City of North Charleston v. Claxton, 315 
 S.C. 56, 62-63, 431 S.E.2d 610, 614 (Ct. App. 1993).  Criteria for determining 
 whether personalty becomes a fixture when affixed to realty includes: (1) the 
 mode of attachment; (2) the character of the structure of the article; (3) the 
 intent of parties making the annexation; and (4) the relationship of the parties.  
 Id.  
In this case, the relationship of the 
 parties is clear: Peggy and Denise are mother and daughter and the Bank is the 
 lender.  With respect to the mode of attachment and the character of the structure, 
 Denise testified that the mobile home is a rectangular doublewide, set up in 
 two sections and fastened together.  She stated:  The tires dont come with 
 it, but its all set up where they just put the tires back under it.  I mean, 
 its movable. Denise further explained:  The tongue is laying right up under 
 it.  All it takes is bolts to put it up.  
At issue is the intent of the parties 
 making the annexation.  There is evidence that Peggy and the Bank intended the 
 mobile home to be a fixture.  Peggy signed a deed and mortgage containing a 
 legal description stating that it was the borrowers intent to treat the mobile 
 home as a fixture and part of the real estate.  In addition, Peggy signed an 
 affidavit stating that the mobile home was permanently affixed to the real estate 
 and a rider in which she promised that the mobile home would be permanently 
 affixed.  Furthermore, she purported to grant the Bank a security interest in 
 the mobile home.  
At most, these documents evidence 
 Peggys and the Banks intention to treat the mobile home as a fixture but do 
 not suggest Denise, as rightful owner of the mobile home, had a similar intent.  
 Although Denise signed the deed, she did not initial the legal description, 
 which stated that the transfer included all improvements and that the borrower 
 intended to treat the mobile home as a fixture.  Nothing in the legal description 
 suggests Denise intended to treat the mobile home as a fixture.   
Moreover, we decline to give substantial 
 weight to the documents considering the circumstances under which they were 
 signed. [3]   Peggy explained that the Bank 
 contacted her and offered her a loan.  She stated that she was seventy years 
 old, did not necessarily understand what she was signing, did not finish the 
 ninth grade, and was in poor health.  Peggys attorney was chosen by the lender, 
 did not leave copies of the documents with Peggy, failed to have the documents 
 properly witnessed, and was hired to represent the interests of Peggy and not 
 Denise.  Neither Peggy nor Denise signed or initialed the legal description, 
 which purported to include the mobile home in the deed and mortgage and purported 
 to state Peggys intent to treat the mobile home as a fixture.
Peggy testified that she believed that 
 the land and the mobile home belonged to her daughter, Denise, but represented 
 that she knew she was signing the papers in order to have the trailer refinanced.  
 Denise, on the other hand, never intended to for her mother to secure the loan 
 with the mobile home or forfeit ownership of the home.  
Based on these facts, we find 
 the mobile home did not become a fixture by its mere annexation to the real 
 estate subject to the equitable mortgage.  Rather, the evidence suggests that 
 the mobile home was readily movable and the parties did not intend to permanently 
 annex the home to the real estate.  As a result, the master did not err in concluding 
 that the mobile home was not a fixture and not subject to the equitable mortgage.
Finally, the Bank argues the master erred 
 in finding it was estopped from including the mobile home in the mortgage because 
 the deed failed to transfer title to the mobile home to Peggy.   The Bank asserts 
 that the statutes setting forth the procedure for transferring a mobile home 
 in addition to real estate were not in effect at the time the deed was executed 
 and therefore not applicable to the transaction.  This argument was never raised 
 to or ruled upon by the master-in-equity, and is not preserved for our review.  
 See Holy Loch Distrib., Inc. v. Hitchcock, 340 S.C. 20, 24, 531 
 S.E.2d 282, 284 (2000).  Furthermore, the masters order did not find that the 
 Bank was estopped from including the mobile home in the mortgage.  Rather, the 
 order determined that the mobile home was not permanently affixed to the property, 
 was not contemplated in the loan, was not transferred by deed to Peggy, and 
 was not subject to the lien because the Bank failed to perfect by listing the 
 interest on the certificate of title.  Therefore, we decline to address this 
 issue on appeal. 
CONCLUSION
Because we find the master correctly 
 concluded that the mobile home was not a fixture and not subject to the equitable 
 mortgage, the order of the master-in-equity is hereby 
 AFFIRMED.
HEARN, C.J., GOOLSBY and WILLIAMS, JJ., concur.       

 
 
 [1] The parties briefs clarify that Denise and Peggy owned the real 
 estate as tenants in common.  The description of the real estate attached 
 to the mortgage and deed explains that it was conveyed to Peggy and Denise 
 by deed in November of 1998.  Peggy testified that the property was her daughters 
 property, but [i]t ended up in my name somehow.  The final order describes 
 Denises interest as an undivided one-half (1/2) interest.  

 
 [2] Approved Federal Savings Bank subsequently assigned 
 the note and mortgage to Appellant, Wells Fargo Bank Minnesota.  

 
 
 [3] The Bank seems to argue, pursuant to the parol evidence rule, that 
 we are bound to consider only the documents as evidence of the parties intent.  
 However, the parol evidence rule only applies to the construction of written 
 agreements.  See Redwend Ltd. Partnership v. Edwards,  
 354 S.C. 459, 471, 581 S.E.2d 496, 502 (Ct. App. 2003) (The parol evidence 
 rule prevents the introduction of extrinsic evidence of agreements or understandings 
 contemporaneous with or prior to execution of a written instrument when the 
 extrinsic evidence is to be used to contradict, vary, or explain the written 
 instrument.).  In this case, we are not construing a written agreement, but 
 determining the extent of an equitable mortgage and fashioning a remedy in 
 equity.  Thus, we are not bound by the parole evidence rule.