534 S.E.2d 688

Edward P. BROCKBANK, Respondent,

v.

BEST CAPITAL CORP., Petitioner.

No. 25162.

Supreme Court of South Carolina.

Heard June 7, 2000.
Decided June 29, 2000.
Rehearing Denied Aug. 7, 2000.

374

James R. Allen and Andrea C. Pope of Barnes, Alford, Stork & Johnson, LLP, of Columbia, for petitioner.

Thomas W. Bunch, II of Robinson, McFadden & Moore, of Columbia, for respondent.

WALLER, Justice:

Edward P. Brockbank (Debtor) sued Best Capital Corp. (Creditor) after the repossession and sale of his mobile home, alleging, among other things, violation of the notice provision contained in Article 9 of the Uniform Commercial Code (UCC).[1] The trial judge granted Creditor's motion for summary judgment. The Court of Appeals reversed and remanded. *Brockbank v. Best Capital Corp.*, Op. No. 99–UP–098 (S.C.Ct.App. filed February 18, 1999). We granted Creditor's petition for a writ of certiorari following the denial by the Court of Appeals of Creditor's petition for rehearing. We affirm the Court of Appeals' opinion as modified.

## FACTS

Brockbank and his wife, Sharon K. Brockbank, purchased a double-wide mobile home from Kahn Development Company in February 1995. Kahn assigned the contract to Creditor.[2]

---

1. S.C.Code Ann. §§ 36–9–101 to –607 (Supp.1999).

2. To purchase the eight-year-old mobile home, the Brockbanks financed $20,607.70 and agreed to pay $35,170.70 in interest, at a rate of 16.5

The Agreement for Sale of Manufactured Home (Agreement) states that Debtor "may take possession of the property, live in it, and continue in possession while this Agreement remains in effect." Debtor agreed to pay taxes and maintain fire insurance coverage, with Creditor named as the loss payee on the insurance policy. Debtor agreed not to transfer or assign his rights under the Agreement without Creditor's prior written permission. Debtor agreed not to move the mobile home from the location specified in the Agreement until the loan was paid in full. Debtor agreed to maintain the home in good repair, and Creditor retained the right to inspect it at any reasonable time upon reasonable notice to Debtor.

The Agreement further provides that

[i]f you fail to make payment when due, if you break any promise under this Agreement, or if the prospect of payment is impaired, the seller ("we") may declare this Agreement in default and demand that the entire balance be paid in full. If we institute suit against you to enforce our rights and obtain a valid judgment against you, you shall pay all of our expenses of suit and reasonable attorney's fees, not to exceed 15% of the balance owing under this Agreement.

Under a section titled "Seller's remedies," the Agreement states:

Except as provided by law, if you default in making any payment or in performing any other obligation hereunder, we may either bring an action against you for specific performance, or enforce a forfeiture of your interest in the manufactured home. If a forfeiture is enforced, you will forfeit all rights and interests in and to the property and appurtenances, and shall immediately surrender to us peaceable possession of the property and forfeit to us, as liquidated damages, all payments made hereunder together with all improvements placed on or in the property. In no event shall the provisions of this paragraph affect our other lawful rights or remedies against you.

---

percent, during the fifteen-year loan. The total sales price, including the $2,200 downpayment, was $57,978.40. Monthly payments were $309.88.

Finally, the Agreement states that "[u]pon your performance of all requirements under this Agreement, including payment of all sums due, we will convey to you good and marketable title free of all liens to this manufactured home."

Debtor left the marital home in August 1995, but continued to make the payments until January 1996. The next month, Debtor sued his wife for divorce and stopped making payments on the marital home. Mrs. Brockbank could not afford to make the payments on the home and moved out in March 1996. Debtor stated in an affidavit that

> [s]ometime in January 1996, I received [Creditor's] demand letter dated January 18, 1996, wherein [Creditor] demanded payment of the entire outstanding balance under the sales agreement. I telephoned [Creditor] about the payments on the mobile home. I told [Creditor] that I would not make monthly payments if I did not have use of the home. I was told that [Creditor] and my wife were discussing payment arrangements.

> I did not receive any other information or have any other contact with [Creditor] until after April 28, 1996. On April 28, 1996, I returned to the mobile home to visit my family and a stranger appeared at the door. The stranger told me that she had purchased this mobile home approximately two weeks earlier.

Creditor had resold the home for $19,500.

Debtor alleged that Creditor was required, pursuant to Article 9 of the UCC, to provide him with notice of the sale of the mobile home. *See* S.C.Code Ann. § 36-9-504(3) (Supp. 1999). Debtor moved for partial summary judgment on the issue of liability, asserting a hearing was necessary only to determine damages under the formula established in S.C.Code Ann. § 36-9-507(1) (Supp.1999).

Creditor counterclaimed, requesting a deficiency judgment and sanctions under the South Carolina Frivolous Civil Proceedings Sanctions Act. Creditor admitted it had not sent Debtor or his estranged wife notice of the sale, but argued that Article 9 applies only to secured transactions and there was no security interest created by the Agreement. Creditor also contended that Debtor was not entitled to notice because

he had abandoned the home and his estranged wife voluntarily had surrendered it to Creditor.

The trial judge granted summary judgment to Creditor. The judge ruled the Agreement constituted an unsecured loan and so the default and penalty provisions of Article 9 did not apply to the transaction. The Court of Appeals reversed, finding that the transaction between Debtor and Creditor falls squarely within the statutory definition of a secured transaction. Based on that determination, the Court of Appeals remanded the case for the trial judge to determine whether Brockbank's alleged abandonment of the home divested him of his rights under Article 9, including the right to notice of the sale.

## ISSUES

1. Did the Court of Appeals err in finding that the Agreement created a security interest in the mobile home?

2. Did the Court of Appeals err in remanding to the lower court the issue of whether Debtor's departure from the home divested him of his rights under Article 9?

3. Did the trial judge err in finding that Debtor's departure from the home divested him of his rights under Article 9?

## STANDARD OF REVIEW

A trial court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. Summary judgment is not appropriate when further inquiry into the facts of the case is desirable to clarify the application of the law. *Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997). Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts. *Id.* In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences

that may be drawn from the evidence in the light most favorable to the non-moving party. *Manning v. Quinn*, 294 S.C. 383, 365 S.E.2d 24 (1988). An appellate court reviews the granting of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP. *Williams v. Chesterfield Lumber Co.*, 267 S.C. 607, 230 S.E.2d 447 (1976); *Wells v. City of Lynchburg*, 331 S.C. 296, 501 S.E.2d 746 (Ct.App.1998).

## DISCUSSION

### 1. CREATION OF SECURITY INTEREST [3]

A mobile home usually is classified as personal property. *See City of North Charleston v. Claxton*, 315 S.C. 56, 431 S.E.2d 610 (Ct.App.1993) (finding that mobile homes were personal property because they had no significant attachments to the property such as permanent foundations or additions). A security interest in a mobile home is perfected by listing the interest on the certificate of title. *See* S.C.Code Ann. § 36–9–302(3)(b) (Supp.1999) and Note 1 of South Carolina Reporter's Notes; S.C.Code Ann. §§ 56–19–210, 56–19–290(3), and 56–19–340 (1991 & Supp.1999). However, the "certificate of title statutes only govern the issue of whether or not the security interest in the collateral in question has been duly perfected. All other aspects of such transactions are governed by the Article 9 rules." Note 1 of South Carolina Reporter's Notes to S.C.Code Ann. § 36–9–302 (Supp.1999).

Article 9 of the UCC applies to "any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts." S.C.Code Ann. § 36–9–102(1)(a) (Supp.1999). The "fundamental objective of Article 9 of the Uniform Code [is to] provid[e] uniform and simplified rules governing chattel security which meet modern commercial needs.... Article 9 re-

---

**3.** We did not grant certiorari on this issue because the Court of Appeals correctly decided in its unpublished opinion that Agreement created a security interest in the mobile home. Nevertheless, we find it necessary to explain the nature of this secured transaction because the notice provision of Article 9 would not apply in the absence of a security interest.

jects any distinction based on form or designation of the device employed." *In re Berry,* 189 B.R. 82, 86 (Bankr.D.S.C. 1995) (quoting S.C.Code Ann. Title 36, Commercial Code, Background and Introduction, p. 14) (internal quotes omitted).

■■■■ No magic words or precise form are necessary to create a security interest so long as the minimum formal requirements regarding perfection, attachment and enforceability are met. *In re CFLC, Inc.,* 166 F.3d 1012, 1016 (9th Cir.1999) (citing *In re Amex–Protein Dev. Corp.,* 504 F.2d 1056, 1058–59 (9th Cir.1974)); *accord United Virginia Bank/Seaboard Natl. v. B.F. Saul Real Estate Inv. Trust,* 641 F.2d 185, 189 (4th Cir.1981); *Mitchell v. Shepherd Mall State Bank,* 458 F.2d 700, 703 (10th Cir.1972). "The court must find both language in a written agreement that objectively indicates the parties' intent to create a security interest and the presence of a subjective intent by the parties to create a security interest." *In re CFLC,* 166 F.3d at 1016.

The UCC defines a "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer ... is limited in effect to a reservation of a security interest." S.C.Code Ann. § 36–1–201(37) (Supp. 1999); *accord* S.C.Code Ann. § 36–2–401(1) (1976). Furthermore, Article 9 explicitly "applies to security interests created by contract including ... [a] conditional sale." S.C.Code Ann. § 36–9–102(2) (Supp.1999); *see also* S.C.Code Ann. § 36–9–107 (Supp.1999) (defining purchase money security interest, which reporter noted is the rough equivalent of a conditional sales device).

■■■■ The Court of Appeals correctly concluded that the Agreement in this case is a conditional sales contract. The Agreement expressly provides for title to remain in the seller until payment of the purchase price. Because such a contract "actually is a security device, the interest in the parties are governed by Article 9 from the time the buyer takes possession...." Reporter's Comments to S.C.Code Ann. § Section 36–2–401; *see also Black's Law Dictionary* 295 (1990) (defining conditional sales contract).

The Agreement required that Debtor surrender the mobile home to Creditor in the event of default, that Debtor name Creditor as the loss payee in the fire insurance policy, that Debtor could not assign his rights in the home without Creditor's prior written permission, that Debtor could not move the home until repaying the loan in full, that Debtor maintain the home, and that Creditor could inspect it at any reasonable time. These provisions indicate, both objectively and subjectively, the parties' intent to create a security interest in the mobile home.

## 2. NECESSITY OF REMAND

The trial judge ruled that even if the Agreement created a security interest, thereby triggering Article 9, Debtor was divested of the Article 9 rights and remedies when he purportedly abandoned the home.

We agree with the parties that the issue of whether Debtor's alleged abandonment of the home divested him of his Article 9 rights was raised to and ruled on by the trial judge. The Court of Appeals erred in remanding the case for lower court to decide the issue. *See Hudson v. Hudson,* 290 S.C. 215, 349 S.E.2d 341 (1986) (remand is unnecessary where trial court properly found it had jurisdiction and already had ruled on post-trial motions). Consequently, we directed the parties to brief the final issue.

## 3. NECESSITY OF NOTICE AFTER DEBTOR'S DEPARTURE

As just explained, the trial judge ruled that even if the Agreement created a security interest, thereby triggering Article 9, Debtor was divested of the Article 9 rights and remedies when he "abandoned" the mobile home. The judge further ruled that the sale of the home was a consequence of Debtor's "abandonment" of the home, and was not pursuant to Debtor's default.

It is undisputed that Creditor, after taking possession of the mobile home, did not notify Debtor or his estranged wife before selling the home to another person. Creditor, however, contends the home was not sold pursuant to Debtor's default because Creditor never exercised its option under the Agree-

ment *to declare* Debtor to be in default. Article 9's default and damage provisions were not triggered because the home "was abandoned by Debtor to Mrs. Brockbank, and Mrs. Brockbank voluntarily turned the home over to [Creditor]." Creditor further asserts notice is not required because Debtor had no equitable financial interest (equity) in the home. We disagree.

Article 9 provides that

[w]hen a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclosure or otherwise enforce the security interest by any available judicial procedure.

S.C.Code Ann. § 36-9-501(1) (Supp.1999). A secured party "has on default the right to take possession of the collateral," either by judicial action or without judicial process if it can be done without breaching the peace. S.C.Code Ann. § 36-9-503 (Supp.1999). A secured party "may sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." S.C.Code Ann. § 36-9-504(1) (Supp.1999).

These provisions make no distinction between abandonment and default. They make no distinction between whether the creditor acquired possession of the collateral before or after default, or by the debtor's voluntary return of the collateral, or by a declaration of default and repossession, or by abandonment, or otherwise. Similarly, the provisions make no distinction between situations in which a debtor has equity in the collateral and when he or she does not.

■ The UCC does not define "default." In a typical secured transaction such as this one, "default" is a state of being as defined under the terms of the parties' agreement. Debtor, in failing to make the payments when due, was in default under the plain terms of the Agreement. Creditor at that point could exercise the rights and remedies available to it under Article 9, absent a contrary provision in the parties' agreement. It was not necessary for Creditor to expressly "declare" Debtor to be in default in order to bring the Article 9 rights and remedies into play. *See McGrady v. Nissan*

*Motor Acceptance Corp.,* 40 F.Supp.2d 1323, 1331 (M.D.Ala. 1998) (plaintiff was in default on automobile loan where plaintiff had failed to make monthly payment and contract stated that a default occurs when a party fails to make payment when due); *Chrysler Credit Corp. v. B.J.M., Jr., Inc.,* 834 F.Supp. 813, 831–32 (E.D.Pa.1993) (noting that UCC is silent on what constitutes default; generally speaking, upon default of the debtor, Article 9 allows the secured party who acts in good faith to obtain a judgment on the debt, repossess and sell the collateral, or repossess and retain the collateral in satisfaction of the debt). We decline to interpret Article 9 in a manner that would allow a creditor to sidestep the applicability of the notice provision by asserting it has the unilateral power to declare a state of default.

In exercising its rights, Creditor was required to scrupulously adhere to procedures contained in Article 9. *See, e.g., C.F. Garcia Enterprises v. Enterprise Ford Tractor,* 253 Va. 104, 480 S.E.2d 497, 500 (Va.1997) ("when a default occurs, a secured creditor is required to comply with Article 9 of the UCC in taking possession and selling the secured property"); *Comer v. Green Tree Acceptance, Inc.,* 858 P.2d 560, 563 (Wyo.1993) ("[u]nder the UCC, default does not divest a debtor of all right and interest in the secured property, nor is the secured party, the creditor, vested with the unlimited power to deal with the property as it wishes").

South Carolina Code Ann. § 36–9–504(3) (Supp.1999) provides, in pertinent part:

Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. *Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made must be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.* (Emphasis added.)

■ The 1988 amendment to this subsection "makes it explicitly clear that the right of a debtor to renounce or modify his right to notice can only be made after, but not before, default." Note 1 of South Carolina Reporter's Notes to section 36–9–504; Act No. 494, Part 5, 1988 S.C.Acts 4449. This Article 9 provision allows a debtor to waive his right to notice only by executing a written statement after default which is signed by the debtor. It "has been strictly construed to require a specific, knowing waiver of the right to notice, in writing and actually bearing the signature of the debtor." *All Valley Acceptance Co. v. Durfey,* 800 S.W.2d 672, 674–75 (Tex.Ct.App.1990).

■ We conclude the outcome in this case is largely dictated by *Crane v. Citicorp Nat'l Servs., Inc.,* 313 S.C. 70, 437 S.E.2d 50 (1993). In *Crane,* we held that co-obligators or guarantors in an installment sales contract for a mobile home are entitled to notice. "The purpose of the notice is to allow the debtor to discharge the debt and redeem the collateral, produce another purchaser, or see that the sale is conducted in a commercially reasonable manner." *Id.* at 73, 437 S.E.2d at 52. *Accord SMS Fin., Ltd. Liability . Co. v. ABCO Homes, Inc.,* 167 F.3d 235, 242 (5th Cir.1999); *Friendly Fin. Corp. v. Bovee,* 702 A.2d 1225, 1227 (Del.1997); *Thong v. My River Home Harbour, Inc.,* 3 S.W.3d 373, 377 (Mo.Ct.App.1999); *Bank One, Texas, N.A. v. Stewart,* 967 S.W.2d 419, 450 (Tex.Ct.App.1998); James J. White & Robert S. Summers, *Uniform Commercial Code,* § 34–13 (1995).

■ Even if we assume, without deciding, that Debtor abandoned the mobile home, notice is still required. Abandonment or voluntary surrender of the collateral by the debtor to the creditor does not waive the debtor's right to notice of resale of the collateral, and the statutory notice provision may not be waived or varied except in writing after default. *Executive Fin. Servs., Inc. v. Garrison,* 722 F.2d 417, 419–20 (8th Cir.1983) (applying Missouri statute); *Gavin v. Washington Post Employees Federal Credit Union,* 397 A.2d 968, 971–72 (D.C.1979); *Rock Rapids State Bank v. Gray,* 366 N.W.2d 570, 574 (Iowa 1985); *Citizens State Bank v. Sparks,* 202 Neb. 661, 276 N.W.2d 661, 663–64 (1979); *Lindberg v. Williston Indus. Supply Co.,* 411 N.W.2d 368, 373–74 (N.D.1987); *Western*

*Nat'l Bank of Casper v. Harrison,* 577 P.2d 635, 638 (Wyo. 1978); *RWR, Inc. v. DFT Trucking, Inc.,* 899 S.W.2d 875, 878 (Mo.Ct.App.1995); *All Valley Acceptance Co.,* 800 S.W.2d at 674–75.

If a secured party fails to give the required notice, a debtor may seek to recover the statutory penalty under Article 9.[4] "[T]he statutory penalty is evidence of the legislature's recognition that the small amount of compensatory damages that may be proven in a consumer goods repossession and sale would be insufficient to ensure creditor compliance with the Code's provisions." *Crane,* 313 S.C. at 74–75, 437 S.E.2d at 53.

In sum, we hold that Debtor was in default under the Agreement when he failed to make the payments when due. Both parties at that point could exercise the rights and remedies contained in Article 9, regardless of whether Creditor expressly had declared Debtor to be in default.

## CONCLUSION

We affirm as modified the opinion of the Court of Appeals and hold that (1) the parties created a security interest in the mobile home under Article 9; (2) remand for consideration of the abandonment issue was not necessary because the trial judge already had ruled on it; and (3) a creditor must give a debtor the notice required by Article 9 even when the creditor believes the debtor has abandoned or voluntarily surrendered the collateral. In light of the undisputed fact that Creditor failed to give the required notice to Debtor, the trial judge erred in denying Debtor's motion for partial summary judg-

---

4. South Carolina Code Ann. § 36–9–507(1) (Supp.1999) provides:

If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price.

ment on liability in the Article 9 cause of action. We remand this case to the circuit court for a determination of the statutory damages and for further proceedings regarding Debtor's remaining causes of action.

**AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, BURNETT, and PLEICONES, JJ., concur.