759 S.E.2d 152

COASTALSTATES BANK, Respondent,

v.

HANOVER HOMES OF SOUTH CAROLINA, LLC; Hanover Homes, Inc.; and George Cosman, Defendants,

Of Whom George Cosman is the Appellant.

George Cosman, Third–Party Plaintiff,

v.

Phillip Petrozzelli, Third–Party Defendant.

Appellate Case No. 2012–213154.

No. 5211.

Court of Appeals of South Carolina.

Heard Jan. 14, 2014.
Decided March 26, 2014.
Withdrawn, Substituted and Refiled June 11, 2014.

Richard R. Gleissner, of Gleissner Law Firm, LLC, of Columbia, for Appellant.

Russell P. Patterson, of Russell P. Patterson, PA, of Hilton Head Island, for Respondent.

SHORT, J.

This is an appeal from an order granting partial summary judgment to CoastalStates Bank (the Bank) in its breach of contract action against Hanover Homes of South Carolina, LLC, Hanover Homes, Inc., and George Cosman. Cosman appeals, arguing the trial court erred in: (1) finding the statute of limitations had not expired; (2) finding personal guaranties were controlling; and (3) granting the Bank summary judgment while also finding a genuine issue of material fact existed as to Cosman's defenses to the Bank's breach of

contract claim. We affirm in part, reverse in part, and remand.

## BACKGROUND FACTS

Cosman, a residential builder, entered into a series of business deals with Phillip Petrozzelli in 2007. Cosman and Petrozzelli formed the company, Hanover Homes of South Carolina, LLC (Borrower) to pursue real estate development. Petrozzelli was the managing partner of Borrower and was the "point man" for the Traditions, a development in Jasper County. According to Cosman, Petrozzelli had a previous longstanding relationship with the Bank and with a bank employee, Buzzy Lawson. Cosman explained his role was to "watch over the construction of [the two model homes]" at Traditions and to oversee the Borrower's other development.

On July 19, 2007, the Bank made three loans totaling $3.632 million to Borrower as follows:

Loan 203611 $2.6 million to purchase 21 vacant lots in the Traditions, a community in Jasper, South Carolina
Loan 203613 $520,000 to construct a model home
Loan 203583 $512,000 to construct a second model home

Cosman and Petrozzelli each signed a personal guaranty to secure each loan. The guaranties provided the following:

1. **Agreement to Guaranty.** For value received, ... [the Guarantor] ... absolutely and unconditionally guaranties ... the payment ... of: (a) all liabilities and obligations of the Borrower to the Bank.... The liability of the Guarantor shall be joint and several for the payment in full of the entire amount of the Guarantied Obligations with that of the Borrower ... or any other guarantor.

2. **Absolute and Unconditional Guaranty; Waiver of Defenses.** This Guaranty is an absolute and unconditional guaranty of payment.... This Guaranty creates a direct and primary obligation of the Guarantor to the Bank without regard to any other guarantor or obligor to the Bank or the value of any security or collateral held by the Bank.... [T]he Guarantor's obligations hereunder may be enforced with or without joinder of the Borrower or any other guarantor and without proceeding against the Borrower, any other guarantor or against any collateral held by the Bank. Guarantor expressly waives, to the fullest extent

permitted by applicable law, each and every defense which under principles of guaranty or suretyship would otherwise operate to impair or diminish the Guarantor's direct and primary liability.... Guarantor acknowledges and understands that nothing except the full and final payment ... shall release and discharge the Guarantor from his obligations and liability hereunder.

Section 2(a) provided the following:

Guarantor agrees that the Bank may take ... the following actions without diminishing, impairing, limiting or abridging the Guarantor's obligations hereunder, and the Guarantor expressly waives any defense ... arising out of any of the following actions taken by the Bank, whether with or without notice to, or consent by, the Guarantor: ... (iii) any release or discharge by the Bank of the Borrower, or any ... other guarantor; ... (v) any settlement made with ... the Borrower, or ... any other guarantor.

3. **Waiver of Notices; Additional Waivers.** Guarantor expressly waives, to the fullest extent permitted by applicable law, each and every notice to which it would otherwise be entitled under principles of guaranty or suretyship law.... including but not limited to: ... notice of any default or nonpayment ... by the Borrower[,] notice of the obtaining or release of any guaranty or surety agreement[, and] notice of nonpayment.

By the end of 2008, Borrower was experiencing financial difficulty. The notes were renewed on October 28, 2009. Thereafter, Cosman alleges he negotiated for both he and Petrozzelli to be released on loans for the other property they developed. As to the Traditions property at issue in this case, Borrower made three short sales to third parties with the Bank's consent and applied the proceeds to the loan balances. The first short sale, one of the model homes, was made in September 2010, and the Bank netted just over $220,000.

Unbeknownst to Cosman, the Bank entered into an agreement (the Agreement) with Borrower and Petrozzelli on October 22, 2010. The Agreement released Borrower and Petrozzelli from liability under the loans and guaranties in exchange for cooperation with any further sales of the property. The Agreement also provided the following:

*No Release of Other Guarantors.* Lender does not release or discharge any obligations, liabilities or guaranties of any other guarantor of the Notes and nothing provided for in this Agreement shall be construed as a waiver of any of Lender's rights and remedies with regard to any other guarantor of the Notes.

The second model home was then sold as a short sale in April 2011, and the Bank netted approximately $181,000. In October 2011, a short sale of the 21 lots netted the Bank approximately $604,000.

The Bank filed this action against Cosman on the guaranties. In his answer and counterclaim, Cosman alleged, *inter alia,* a conspiracy between the Bank and Petrozzelli and breach of contract accompanied by a fraudulent act.[1] Cosman also raised numerous defenses, including the expiration of the statute of limitations and Bank's discharge of Borrower's liability under the notes.

On August 10, 2012, and September 7, 2012, the trial court held hearings on the parties' cross-motions for summary judgment. At the time of the hearings, the Bank claimed a balance due on the notes of $3.299 million. The trial court: (1) dismissed Cosman's statute of limitations defense; (2) granted the Bank partial summary judgment, finding the release by the Bank of Borrower and Petrozzelli did not result in the release or discharge of Cosman under the three guaranties; (3) denied the Bank's motions for summary judgment as to Cosman's breach of contract accompanied by a fraudulent act and conspiracy causes of action; (4) granted judgment to the Bank for $3,299,665.51; and (5) awarded reasonable attorney fees and costs to be determined at a subsequent hearing. This appeal follows.

---

1. Cosman alleged, *inter alia,* that Petruzzelli fraudulently transferred assets; created self-settled trusts; and conspired with the Bank to sell the property under market value to a "friend of the [B]ank." Cosman produced appraisals indicating that at the time the documents were signed in 2007, the value of the lots was $4.3 million, and the value of each model home was $650,000, for a combined value of $5.6 million. Cosman also produced emails and made other allegations of wrongdoing that are relevant only to the conspiracy and breach of contract accompanied by a fraudulent act causes of action.

## STANDARD OF REVIEW

On appeal from the grant of a summary judgment motion, this court applies the same standard as that required for the circuit court under Rule 56(c), SCRCP. *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000). " 'Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Adamson v. Richland Cnty. Sch. Dist. One*, 332 S.C. 121, 124, 503 S.E.2d 752, 753 (Ct.App. 1998) (quoting *Tupper v. Dorchester Cnty.*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997)).

"Summary judgment should be granted when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ." *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 240, 672 S.E.2d 799, 802 (Ct.App.2009). "However, summary judgment is not appropriate when further inquiry into the facts of the case is desirable to clarify the application of law." *Id.* "In determining whether any triable issues of fact exist, the evidence and all inferences must be viewed in the light most favorable to the nonmoving party." *Pee Dee*, 381 S.C. at 240, 672 S.E.2d at 802. "Thus, the appellate court reviews all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party." *Id.* Further, " '[s]ummary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts.' " *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 456, 684 S.E.2d 756, 758 (2009) (quoting *Brockbank*, 341 S.C. at 378, 534 S.E.2d at 692).

## LAW/ANALYSIS

### A. The Statute of Limitations

Cosman argues the trial court erred in finding the Bank was not barred from bringing the action based on the expiration of the statute of limitations. Cosman argues the statute of limitations began to run at the time the notes were made in July 2007.[2] We disagree.

Section 1 of the guaranty provides for "payment when and as due upon maturity." The maturity dates of the loans were

---

2. The notes were renewed in 2009.

August 2009 and April 2010. The Bank filed this action in December 2011.

An action for breach of contract must be commenced within three years. S.C.Code Ann. § 15–3–530(1) (2005). Under "the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered." *Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996). "The discovery rule applies to breach of contract actions." *Prince v. Liberty Life Ins. Co.*, 390 S.C. 166, 169, 700 S.E.2d 280, 282 (Ct.App.2010). "Pursuant to the discovery rule, a breach of contract action accrues not on the date of the breach, but rather on the date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence." *Maher v. Tietex Corp.*, 331 S.C. 371, 377, 500 S.E.2d 204, 207 (Ct.App.1998). "[T]he statute of limitations on an action on an absolute guaranty, which is conditioned only on the debtor's default, begins to run when the obligation matures and the debtor defaults." 38 Am.Jur.2d *Guaranty* § 96, at 1040 (2010).

Cosman argues the guaranties are demand notes, which are due immediately; thus, the statute of limitations runs in favor of the maker from the date of the execution of the instrument.[3] *See Coleman v. Page's Estate*, 202 S.C. 486, 488–89, 25 S.E.2d 559, 559–60 (1943) (stating "the law is well settled that a promissory note payable on demand, with or without interest, is due immediately, and that the statute of limitations runs in favor of the maker from the date of the execution of the instrument"). However, we agree with the trial court that the guaranties in this case were not demand

---

3. Cosman also argues for the first time on appeal that the guaranties and notes should be considered demand notes because they are perpetual contracts with no specific duration, and perpetual contracts are not favored in South Carolina. *See Carolina Cable Network v. Alert Cable TV, Inc.*, 316 S.C. 98, 101, 447 S.E.2d 199, 201 (1994) (stating "perpetual contracts have not been favored in South Carolina and are generally upheld only where the perpetual nature of the agreement is an express term of the contract"). This argument is not preserved for appellate review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

notes because they all had specific maturity dates. We likewise agree with the trial court that to accept Cosman's theory that the statute of limitations begins to run on the date the guaranty is signed could result in "virtually no guarantee ever being enforceable in our State" and is "inconsistent with ... South Carolina law." Accordingly, we affirm the trial court's finding that the Bank was not barred from bringing the action based on the expiration of the statute of limitations.

## B. The Guaranties

Cosman also argues the trial court erred in interpreting the guaranties as imposing liability on him when Borrower's obligations were fully satisfied. We agree.

"A guaranty is a contract." *TranSouth Fin. Corp. v. Cochran,* 324 S.C. 290, 294, 478 S.E.2d 63, 65 (Ct.App.1996). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *McGill v. Moore,* 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009). "'Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning.'" *USAA Prop. & Cas. Ins. Co. v. Clegg,* 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008) (quoting *Sloan Constr. Co. v. Cent. Nat'l Ins. Co. of Omaha,* 269 S.C. 183, 185, 236 S.E.2d 818, 819 (1977)).

"The law in this state regarding the construction and interpretation of contracts is well settled." *ERIE Ins. Co. v. Winter Constr. Co.,* 393 S.C. 455, 461, 713 S.E.2d 318, 321 (Ct.App.2011). "In construing a contract, it is axiomatic that the main concern of the court is to ascertain and give effect to the intention of the parties." *D.A. Davis Constr. Co. v. Palmetto Props., Inc.,* 281 S.C. 415, 418, 315 S.E.2d 370, 372 (1984). "If its language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and the contract's language determines the instrument's force and effect." *Ellie, Inc. v. Miccichi,* 358 S.C. 78, 93, 594 S.E.2d 485, 493 (Ct.App.2004).

"On the other hand, a contract is ambiguous when its terms are capable of having more than one meaning when viewed by a reasonably intelligent person who has examined

the entire agreement." *Progressive Max Ins. Co. v. Floating Caps, Inc.,* 405 S.C. 35, 46–47, 747 S.E.2d 178, 184 (2013). "[A] court will construe any doubts and ambiguities in an agreement against the drafter of the agreement." *Mathis v. Brown & Brown of S.C., Inc.,* 389 S.C. 299, 309, 698 S.E.2d 773, 778 (2010).

 "A guaranty of payment is an absolute or unconditional promise to pay a particular debt if it is not paid by the debtor at maturity." *Citizens & S. Nat'l Bank of S.C. v. Lanford,* 313 S.C. 540, 543, 443 S.E.2d 549, 550 (1994). "The general rule in South Carolina ... is that a guaranty of payment is an obligation separate and distinct from the original note." *Id.* at 544, 443 S.E.2d at 551 (internal citation omitted). In *Lanford,* our supreme court further defined a guaranty as follows:

> The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral.

*Id.* (quoting 38 Am.Jur.2d Guaranty § 4). The court in *Lanford* "adhere[d] to the principle that the guaranty of payment and the promissory note are two separate contracts" and concluded the guarantor, who was not a party to the note, could not avail himself of defenses available to the debtor. *Id.; see* Frank S.H. Bae & Marian E. McGrath, *The Rights of A Surety (or Secondary Obligor) Under the Restatement of the Law, Third, Suretyship & Guaranty,* 122 Banking L.J. 783, 783 (2005) (("The Bible warned against becoming a surety (secondary obligor), stating that '[h]e who is a surety for a stranger will surely suffer for it, but he who hates going surety is safe.' ") (quoting Proverbs 11:15)).

Citing the Restatement (Third) of Suretyship & Guaranty §§ 37–41(1996), Cosman argues, "The law developed so that a guarantor may be discharged under certain circumstances if modifications of the obligations between the bank and the borrower are made without the consent of the guarantor." For instance, Cosman relies on sections 37, 38, and 41, which provide protection to guarantors. Restatement (Third) of

Suretyship & Guaranty §§ 37–41 (1996) (providing for protection of a guarantor when the principal obligor is released). Cosman also argues the Restatement provides for (1) the protection of a guarantor when an agreement between the bank and the borrower provides for a reservation of a right of action against the guarantor, and (2) the prevention of opportunistic behavior by the bank and the borrower without regard to the consequences to the guarantor.

Cosman maintains that amendments to South Carolina's UCC after our supreme court's decision in *Lanford* indicate our Legislature intended to provide the Restatement protections to guarantors. Cosman argues our Legislature has recognized this development in the law by enacting the current versions of Articles 3 and 4 of the UCC, found in S.C.Code Ann. §§ 36–3–101, 36–4–101 (2003 & Supp.2013). Cosman contends that reading the guaranties as the trial court did, which results in guarantors being forever obligated on a debt that is forgiven, is unconscionable.

The Bank argues section 36–3–605(a), providing for the discharge of secondary obligors, only applies to an "instrument," which is a negotiable, unconditional promise to pay a fixed sum. *See* S.C.Code Ann. § 36–3–605(a) (Supp.2013).[4] The Bank further argues the protection of section 36–3–605(a) does not apply if the guarantor expressly waives the defenses

---

4. Section 36–3–605(a) provides: "If a person entitled to enforce an instrument releases the obligation of a principal obligor in whole or in part, and another party to the instrument is a secondary obligor with respect to the obligation of that principal obligor, the following rules apply:

(1) Any obligations of the principal obligor to the secondary obligor with respect to any previous payment by the secondary obligor are not affected. Unless the terms of the release preserve the secondary obligor's recourse, the principal obligor is discharged, to the extent of the release, from any other duties to the secondary obligor under this chapter.

(2) Unless the terms of the release provide that the person entitled to enforce the instrument retains the right to enforce the instrument against the secondary obligor, the secondary obligor is discharged to the same extent as the principal obligor from any unperformed portion of its obligation on the instrument....

(3) If the secondary obligor is not discharged under Paragraph (2), the secondary obligor is discharged to the extent of the value of the consideration for the release, and to the extent that the release would otherwise cause the secondary obligor a loss.

based on the law of suretyship, and Cosman waived his defenses in the guaranties. *See* S.C.Code Ann. § 36–3–605(f) (Supp.2013) (stating "[a] secondary obligor is not discharged under this section if the secondary obligor consents to the event or conduct that is the basis of the discharge ... or a separate agreement of the party provides for waiver of discharge under this section specifically or by general language indicat[es the waiver of] defenses"). Finally, the Bank argues the South Carolina Legislature did not adopt all of the provisions of the Restatement, and the Official Comment 9 to section 36–3–605 of the South Carolina Code provides that the release of a guarantor will occur "only in the occasional case" and "[t]he importance of the suretyship defenses provided ... is greatly diminished by the fact that the right to discharge can be waived...." S.C.Code Ann. § 36–3–605 cmt. 9 (Supp. 2013).

The general rule releasing a guarantor when a creditor is released provides:

> Generally, acts of the guarantee which have the effect of discharging the principal debtor despite the lack of complete payment or of complete performance of the guaranteed contract also operate as a discharge of the guarantor. Where the principal debtor has not made complete payment or has not completely performed the guaranteed contract, but the effect of the creditor's acts is nevertheless to release or discharge him or her, the guarantor is also discharged, unless the guarantee's right of recourse against the guarantor is expressly reserved in the contract releasing the principal, or in the guaranty contract.... Thus, where the creditor enters into a compromise agreement with the debtor, the effect of which is to release the debtor from further liability, the guarantor can no longer be held liable, unless the guaranty contract or the compromise agreement provides otherwise.

38A C.J.S. *Guaranty* § 111, 720–21 (2008); *see Poole v. Bradham*, 143 S.C. 156, 166, 141 S.E. 267, 270–71 (1927) (stating "in equity[,] the discharge of one surety operates to discharge all others 'in the like relation to the debt,' unless it be shown by competent testimony that the parties intended otherwise," and further explaining that equity "construes a release according to the intention of the parties").

However, in *Cochran,* 324 S.C. at 294, 478 S.E.2d at 65, this court found the guarantor unconditionally agreed to pay all sums due and all losses the lender suffered due to the creditor's default. The court found "[t]he terms of the guaranty provided that [the guarantor's] obligation to [the lender] would be unaffected if [the lender] decided to release [the creditor's] obligation." *Id.* This court found the release of the creditor from liability did not relieve the guarantor of liability. *Id.*

Cosman distinguishes his guaranties from those in *Cochran.* In *Cochran,* the lender loaned money to a used car dealership, and three corporate officers and a company guarantied the loan. *Id.* at 292, 478 S.E.2d at 64. A collection action by the lender resulted in a confession of judgment against all parties except one guarantor, Ralph Cochran. *Id.* Many years later, the lender filed an action against Cochran to collect the judgment. *Id.* at 292–93, 478 S.E.2d at 64. The trial court directed a verdict in favor of Cochran; however, this court reversed, finding the ten-year expiration of the confession of judgment did not extinguish Cochran's obligation to the lender under his guaranty, which was an independent contractual obligation. *Id.* at 293–95, 478 S.E.2d at 65.

The relevant provisions of Cochran's guaranty provided:

[E]ach of us as primary obligor jointly and severally and unconditionally guarantees to you that Dealer will fully, promptly and faithfully perform, pay and discharge all Dealer's present, existing and future obligations to you; and agrees, without your first having to proceed against Dealer . . ., to pay on demand all sums due and to become due to you from Dealer and all losses, costs, attorney's fees or expenses which you may suffer by reason of Dealer's default. . . .

*Id.* at 294, 478 S.E.2d at 65 (alteration in original). As the guarantor, Cochran "unconditionally agreed to pay 'all sums due' and 'all losses' that [the lender] suffered due to [the car dealership's] default. The terms of the guaranty provided that Cochran's obligation to [the lender] would be unaffected if [the lender] decided to release [the car dealership's] obligation." *Id.* This court found the lender suffered "a loss" due to the dealership's default, and Cochran's obligation to the

lender was unaffected by the release of the dealership's obligation. *Id.*

Cosman argues the guarantor in *Cochran* guarantied more than the obligations of the borrower; whereas in this case, he provided a guaranty only for the liabilities of Borrower, and the Agreement extinguished those obligations. Cosman also distinguishes *Cochran*, arguing the debt in *Cochran* was no longer enforceable against the borrower; thus, the obligation of the guarantor was not extinguished. In this case, the underlying debt is satisfied.

■ Under our reading of the relevant authorities, we must review the terms of the guaranty and the Agreement to determine if Cosman was released from liability with the release of Borrower. Cosman argues section 1 of the guaranty is controlling: The guarantor "absolutely and unconditionally guaranties to the Bank ... the payment ... of: (a) all liabilities and obligations of the Borrower to the Bank...." Cosman maintains the release of Borrower released him as a guarantor under this section of the guaranty because there is no longer an obligation of Borrower to the Bank.

Cosman also argues that section 2, in which he "acknowledges and understands that nothing except the full and final payment ... shall release and discharge the Guarantor from his obligations and liability hereunder" supports his interpretation of the guaranties because the Bank's acceptance of the proceeds of the short sales and release of Borrower acted as "full and final payment" of Borrower's debts. Cosman argues that at a minimum, the guaranties are unclear about whether he is released from liability when Borrower is released; thus, there is a genuine issue of material fact precluding summary judgment.

As to the waiver portion of section 2(a), Cosman argues that interpreting it to provide that the guarantor is obligated would lead to the ridiculous and unconscionable outcome of requiring Cosman to pay the full amount of the notes regardless of any amounts already paid to the Bank. Cosman maintains the trial court erred in relying on cases that consider guaranties with materially different terms than the guaranties in this case.

Section 2(a) provided the following:

> Guarantor agrees that the Bank may take ... the following actions without diminishing, impairing, limiting or abridging the Guarantor's obligations hereunder, and the Guarantor expressly waives any defense ... arising out of any of the following actions taken by the Bank, whether with or without notice to, or consent by, the Guarantor: ... (iii) any release or discharge by the Bank of the Borrower, or any ... other guarantor; ... (v) any settlement made with ... the Borrower, or ... any other guarantor.

We agree the guaranties in this case can reasonably be read to limit Cosman's liability to "all liabilities and obligation of the Borrower to the Bank." Because the Bank has accepted full and final payment from the Borrower, the guaranties can reasonably be interpreted to conclude there is no longer any liability of the Borrower to the Bank. Viewing the evidence in the light most favorable to Cosman, as we must do in reviewing the trial court's grant of the Bank's motion for summary judgment, we find the guaranties created an ambiguity. *See Hard Hat Workforce Solutions, LLC v. Mech. HVAC Servs., Inc.,* 406 S.C. 294, 750 S.E.2d 921, 923–24 (2013) (reviewing the grant of a motion for summary judgment in the light most favorable to the nonmoving party in an action for a claim against a payment bond). Thus, we find the trial court erred in finding Cosman's liability was not extinguished as a matter of law. *See Progressive Max Ins. Co.,* 405 S.C. at 46–47, 747 S.E.2d at 184 (finding a contract is ambiguous when its terms are capable of having more than one meaning when viewed by a reasonably intelligent person who has examined the entire agreement); *Mathis,* 389 S.C. at 309, 698 S.E.2d at 778 (construing ambiguities in an agreement against the drafter of the agreement). Accordingly, we reverse the trial court's order granting summary judgment, which concluded the release of the Bank and Petrozzelli did not release Cosman.

## C. The Breach of Contract Claim

Cosman lastly argues the trial court erred in granting summary judgment on the breach of contract cause of action while also finding a genuine issue of material fact existed as to his "defenses" to the breach of contract claim. Based on our disposition of the trial court's grant of summary judgment on the guaranties, we need not address this issue. *See Futch v.*

*McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address an issue when a decision on a prior issue is dispositive).

## IV. CONCLUSION

For the foregoing reasons, the order granting summary judgment is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

WILLIAMS and THOMAS, JJ., concur.