**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

ScanSource, Inc., Respondent,

v.

Dependable Technology Center, LLC and George G. Moraru, Appellants.

Appellate Case No. 2022-001619

---

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

---

Unpublished Opinion No. 2024-UP-260
Submitted June 1, 2024 – Filed July 17, 2024

---

**AFFIRMED**

---

J. Falkner Wilkes, of Oakland, Mississippi, and William R. McKibbon, III, of Greenville, both for Appellants.

Craig Horger Allen, of Craig H. Allen, P.A., of Greenville for Respondent.

---

**PER CURIAM:** Dependable Technology Center and George G. Moraru appeal a circuit court judgment of $149,379.07, arguing the circuit court erred by: (1) issuing judgment against Appellants before they had an opportunity to present evidence at trial, (2) finding as a matter of law that Moraru's individual personal

guarantee was valid and enforceable, and (3) granting judgment against Moraru in an amount exceeding $5,000. We affirm.

**Facts and Procedural History**

On April 12, 2013, Dependable completed a credit application with ScanSource in order to purchase goods on a short-term credit basis. That same day, Moraru executed an individual personal guarantee (the Guarantee) covering Dependable's indebtedness. The Guarantee stated:

> In conjunction with my individual personal guarantee and customer application to ScanSource, Inc. and its subsidiaries and/or affiliates (hereinafter "Creditor") on behalf of Dependable Tech Center (hereinafter "Debtor") of which I, George G. Moraru . . . am an officer, principal, partner, or major shareholder, I represent to Creditor that neither Debtor nor any company in which I have been an officer, principal, partner, or major shareholder, nor have I personally never [sic] experienced any type of insolvency including bankruptcy.
>
> I, for good and valuable consideration, including the extension of trade credit to debtor which I hereby acknowledge as having been received, do hereby personally guarantee and promise to pay any obligation to Creditor on demand for any indebtedness of Debtor to Creditor now due and/or which may be hereafter become due to Creditor for merchandise and other property hereafter sold and delivered by it to Debtor. This guarantee is one of payment, not of collection.
>
> This guarantee is given individually, not in my capacity as _____ of Dependable Tech Center.
>
> This guarantee shall be an irrevocable guarantee and indemnity to Creditor. Further, I hereby subrogate any indebtedness of Debtor, which it may have to me to the indebtedness of Creditor.

I do hereby waive notice of default, non-payment and notice thereof and to jury trial and consent to (i) changes in the terms of the guaranteed indebtedness and (ii) any and all renewals or modifications of extension of trade credit. I agree that Creditor may take any action with regard to the disposition of the collateral, including releasing it, and still enforce this guarantee without foreclosing on the collateral first. I agree that this guarantee shall be governed by the substantive law of the State of South Carolina without regard to its provisions concerning conflicts of law. I grant permission to Creditor to obtain information from any and all sources required to properly ascertain my capability to meet my financial obligations.

On September 13, 2019, ScanSource filed an action seeking judgment against Appellants following ScanSource's extensions of credit for the sale of goods and services. ScanSource sought $72,923.39, plus one and a half percent interest, and attorney's fees. To its complaint, ScanSource attached Dependable's September 10, 2014 credit application and Moraru's April 12, 2013 Guarantee. Appellants answered, arguing that if Moraru's Guarantee were valid, his liability was limited to $5,000—the credit limit requested in the September 2014 credit application.

At trial, ScanSource's Director of Financial Services, Steven Zielinski, identified Dependable's initial April 2013 credit application and Moraru's Guarantee, and testified that ScanSource opened a credit account for Dependable. ScanSource conducted business with Dependable from 2013 to 2016, and during this time, Dependable submitted three credit applications. Zielinski identified Dependable's December 7, 2013 and September 10, 2014 applications, noting their terms were similar to those of the initial April 2013 credit application. Zielinski explained that ScanSource periodically requests updated credit applications from customers to ensure it has accurate contact and legal entity information.

Zielinski identified past due invoices and testified Dependable last made payment to ScanSource on December 21, 2016. Although Dependable made payments towards some invoices, an unpaid balance of $72,923.39 remained. According to Zielinski, Dependable had not disputed the amount owed on the account.

On cross-examination, Appellants asked Zielinski about a May 21, 2013 email from ScanSource denying Dependable's April 2013 credit application. Counsel for ScanSource objected because he had not received the document in discovery.

ScanSource explained it served discovery and while it received a response to its requests for admission, it never received any response to its interrogatories or request for production of documents. Although Appellants did not deny that they failed to respond to the discovery requests, they sought to introduce a chain of emails between ScanSource and Appellants. Appellants' counsel stated:

> Your Honor, this is a document from ScanSource, itself, that specifically declines giving any credit to my company. And, Your Honor, I haven't seen any of the documents that they provided. In fact, the Plaintiff just based the contract on a completely different document than they pled in the complaint. The complaint tries to make a claim for a 2014 contract and today comes in here arguing about a 2013. We've never seen that. And the Plaintiff is limited to pleading and proving the case as it is pled. And that is not done.[1]

The circuit court allowed Appellants to make a proffer regarding the email chain. Zielinski testified that if ScanSource emailed a customer stating it declined credit, that meant ScanSource denied credit as to that particular application. When Appellants noted Zielinski testified ScanSource accepted the 2013 application and granted credit, Zielinski responded, "That's my understanding." After reviewing the emails, Zielinski noted ScanSource denied Dependable's April 2013 credit application because Dependable failed to respond to ScanSource's requests that it update certain missing information, including an incomplete resale tax certificate. However, on December 7, 2013, Dependable submitted a second credit application, rectifying the issue of the missing tax information. ScanSource approved this credit application, and Dependable made its first purchase in 2014.

Appellants then argued, "Your Honor, the point here is there is only one grouping of documents that they allege created a contract with a personal guarantee by my client. And that was April of 2013, and it was declined." The circuit court

---

[1] Following this assertion, counsel for ScanSource explained he "never received any discovery requests from them, Your Honor," noted he had never seen the email, and reiterated his objection.

reviewed the documents and noted nothing in the Guarantee tied it to the April 2013 application. The circuit court explained, "[T]he document says it shall be an irrevocable guarantee and indemnity to creditor. It doesn't say based on granting an application in April of 2013." The circuit court stated it planned to rule as a matter of law that the Guarantee was valid independent of the April 2013 credit application and explained Dependable "satisfied whatever contingencies needed to be satisfied" in December when ScanSource approved the second credit application. Still, the circuit court found the email had impeachment value and Appellants would be allowed to cross-examine Zielinski with it despite their failure to answer ScanSource's interrogatories.

The circuit court then made three attempts to call the jury back for the completion of Zielinski's cross-examination; however, Appellants' counsel interjected, stating:

> Your Honor, at this point my client is going to confess judgment on behalf of the LLC, which is a defunct LLC, which Mr. Allen knows. We've talked about that a lot. You've ruled as a matter of law as to the guarantee. And we've not doubted the accounting. I believe that's going to end the case.
>
> . . . .
>
> [W]e don't doubt the debt from the company's standpoint. And since you had ruled the guarantee is valid and enforceable, I don't know how there's an issue left.

ScanSource responded by requesting a directed verdict. Additional discussion followed, including the circuit court's inquiry as to whether ScanSource needed to conduct a redirect examination of Zielinski. ScanSource declined, noting it had no other witnesses. The circuit court then granted the directed verdict, made the email chain a court's exhibit, and subsequently entered judgment for ScanSource in the amount of $149,379.07 against Dependable and Moraru. Appellants timely appealed.

## I. Enforceability of the Personal Guarantee

Appellants argue Moraru's Guarantee was executed specifically in conjunction with the April 2013 credit application ScanSource denied. Appellants contend ScanSource cannot rely on the Guarantee for claims related to later credit

applications; thus, in their view, the circuit court erred in finding the Guarantee valid and in entering judgment for ScanSource.  We disagree.

"[A] guarantor's liability is an independent contractual obligation."  *TranSouth Fin. Corp. v. Cochran*, 324 S.C. 290, 295, 478 S.E.2d 63, 65 (Ct. App. 1996); *see also Citizens & S. Nat. Bank of S.C. v. Lanford*, 313 S.C. 540, 544, 443 S.E.2d 549, 551 (1994) ("The general rule in South Carolina, as noted in *Rock Hill Nat'l Bank v. Honeycutt*, 289 S.C. 98, 344 S.E.2d 875 (Ct.App.1986), is that a guaranty of payment is an obligation separate and distinct from the original note.").

> The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation.  The undertaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral.

*CoastalStates Bank v. Hanover Homes of S.C., LLC*, 408 S.C. 510, 519, 759 S.E.2d 152, 157 (Ct. App. 2014) (quoting *Lanford*, 313 S.C. at 543, 443 S.E.2d at 550).

"A guaranty is a contract and should be construed based on the language used by the parties to express their intention."  *Cochran*, 324 S.C. at 294, 478 S.E.2d at 65 "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language."  *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009).

In addition to the presumption that the Guarantee and the underlying obligation are separate contractual obligations, the language of the Guarantee supports the circuit court's finding that the Guarantee is valid as to Dependable's ongoing indebtedness.  There is no language in the Guarantee tying it to a specific credit application, and the word "optional" appears in bold, capital letters at the top of the document.  Under the terms of the Guarantee, Moraru agreed to pay *any* obligation for *any* indebtedness of the Debtor to ScanSource, and the Guarantee addresses indebtedness "hereafter due . . . for merchandise and other property hereafter sold and delivered" by ScanSource to Dependable.  Moraru agreed to personally guarantee Dependable's indebtedness "hereafter due," and ScanSource extended the anticipated credit.  Therefore, the circuit court did not err in finding the Guarantee was valid as a matter of law.

## II. Directed Verdict

Appellants further argue the circuit court erred in granting ScanSource a directed verdict because it failed to construe all evidence and inferences therefrom in Moraru's favor. *See Est. of Carr ex rel. Bolton v. Circle S Enters., Inc.*, 379 S.C. 31, 38, 664 S.E.2d 83, 86 (Ct. App. 2008) ("In ruling on a motion for directed verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion and to deny the motion when either the evidence yields more than one inference or its inference is in doubt.").

The crux of Appellants' argument on this point is that the circuit court failed to consider the effect of ScanSource's denial of the April 2013 credit application in conjunction with the Guarantee. For the reasons discussed in Section I, the court properly found the Guarantee—by its own language—applied to the parties' ongoing business relationship and credit extensions, and not merely to the declined April 2013 application. Appellants then chose to confess judgment, despite the circuit court's ruling that Appellants could cross-examine Zielinski with the email declining the April 2013 credit application.[2] We find the circuit court did not err in directing a verdict for ScanSource.

## III. Opportunity to Present Evidence

Appellants next assert the circuit court erred in directing a verdict and entering judgment before Appellants had the opportunity to present evidence. They contend the circuit court's finding that the Guarantee was valid as a matter of law "removed any defense Moraru had and effectively ended the case without Moraru ever having the opportunity to offer Moraru's testimony or any other evidence on the issue." Appellants argue the supreme court's opinion in *Halsey v. Simmons*, 432 S.C. 54, 849 S.E.2d 578 (2020) (per curiam) requires this court to reverse. We disagree.

When the circuit court stated it planned to find the Guarantee valid as a matter of law, Appellants did not seek to proffer Moraru's testimony—or any other evidence—challenging the validity of the Guarantee or the invoices Zielinski identified. In fact, Appellants' counsel noted in opening that there would be "no dispute about goods that ScanSource has stated were sold to Dependable." Although Appellants claim in their briefs to this court that the circuit court's ruling

---

[2] This email was made a court's exhibit but was not admitted into evidence.

"constitutes a clear violation of Moraru's right to due process," no such argument was made to the circuit court. Moreover, nothing in the record suggests Appellants were denied the opportunity to continue with their cross-examination, present evidence, or offer additional argument before voluntarily confessing judgment.

*Halsey* does not support Appellants' position. There, the plaintiffs filed an action challenging the sale of their property at a delinquent tax sale. *Id.* at 55-56, 849 S.E.2d at 579. At trial, the plaintiffs allowed the defendants to present evidence first, and the special referee granted defendants' motion to approve the sale before the plaintiffs had an opportunity to present their own case. *Id.* at 56, 849 S.E.2d at 579. In their subsequent motion to amend the judgment, the plaintiffs "summarized the factual presentation they were not permitted to make and explained several theories on how those facts could have changed the outcome of the case." *Id.* Such has not occurred here.

Appellants did not attempt to proffer any additional evidence they intended to present, though they now argue on appeal that they were prejudiced by the lack of such opportunity. Specifically, Appellants assert they were prejudiced by the granting of a directed verdict prior to Moraru's testimony, but there is no indication in the record what Moraru's testimony might have addressed—or how it might have been helpful in challenging the plain language of his Guarantee. In *Halsey*, the plaintiffs' post-trial summary of the evidence they would have presented allowed the special referee an opportunity to amend the judgment, though he declined to do so. *Id.* Appellants made no such showing here, either at trial or by post-trial motion. The circuit court granted ScanSource's directed verdict motion only after the defendants chose to confess judgment following the circuit court's statement that the Guarantee was valid as to ScanSource's extensions of credit to Dependable. We find no error by the circuit court.

## IV. Judgment Exceeding $5000

Finally, Appellants contend that even if the Guarantee is valid, any judgment against Moraru must be limited to $5,000 because the credit application attached with the complaint requested a $5,000 limit. Again, we disagree.

In support of this argument, Appellants cite cases addressing the construction of contemporaneously executed documents. However, the relevant documents here were not executed at the same time—as noted above, the Guarantee is dated April 12, 2013, and Dependable's last credit application to ScanSource is dated September 10, 2014. Appellants' various ScanSource credit applications and

invoices were admitted into evidence without objection. The April 2013 application requested a credit limit of "as much as p," the December 2013 application contained no specific amount, and the September 2014 application requested a credit limit of $5,000. There is no other evidence in the record addressing a capped credit limit applicable to Dependable's trade credit with ScanSource, and the Guarantee provides no such limit. Nor does the Guarantee cap Moraru's liability for ScanSource's extensions of credit. As contemplated by the Guarantee, ScanSource extended trade credit to Appellants, and Appellants accepted it. Appellants chose not to challenge the invoices and indebtedness ScanSource presented at trial. For these reasons, the circuit court did not err in entering a judgment exceeding $5,000 against Moraru.

**AFFIRMED.**[3]

**THOMAS, MCDONALD, and VERDIN, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.